UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff,*

    vs.                                                        Case No. 23-cr-33

SHELTON LARKIN,

    *Defendant.*

## MOTION TO DISMISS INDICTMENT

At 23 years old, Shelton Larkin has no felony convictions, no misdemeanor convictions, and no juvenile delinquency adjudications in his past – in fact, Mr. Larkin has never been arrested at all. Despite having an otherwise clean criminal record, working a steady job, and living a law-abiding life by almost every metric, Mr. Larkin now finds himself facing federal criminal charges under 18 U.S.C. § 922(a)(6) for allegedly making "false and fictitious" written statements when he purchased firearms from a federally licensed dealer back in 2021. Specifically, the government alleges that Mr. Larkin lied when he checked the box on the ATF Form 4473 noting that he was not an "unlawful user of, or addicted to, marijuana."

The charges against Mr. Larkin, however, run afoul of this nation's constitution in more ways than one. First, the indictment violates Mr. Larkin's Fifth and Sixth Amendment rights and fails to sufficiently state an offense. Second, even with a legally

*Federal Defender Services*
*Of Wisconsin, Inc.*

sufficient indictment, the charges against Mr. Larkin would violate his Second Amendment rights, particularly under the legal framework recently espoused by the Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).

For those reasons, Mr. Larkin respectfully asks the Court to dismiss all counts of the indictment.

## ARGUMENT

**I.    The indictment here is legally insufficient to charge Mr. Larkin with making false statements in connection with his purchase of firearms.**

"The Fifth Amendment guarantee of the right to indictment by a grand jury, its protection against double jeopardy, and the Sixth Amendment guarantee that a defendant be informed of the nature of the charges against him establish the minimum requirements for an indictment." *United States v. Fassnacht*, 332 F.3d 440, 444-45 (7th Cir. 2003). To pass constitutional muster, an indictment must, among other things, "state all of the elements of the crime charged." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000).

Here, the indictment charges that:

> Shelton W. Larkin, JR., in connection with the acquisition of firearms from federal licensees, knowingly made a false and fictitious written statement intended and likely to deceive the licensees as to a fact material to the lawfulness of the sale and disposition of the firearms under provisions of Chapter 44 of Title 18, United States Code.

Turning to the specific allegations, the indictment then continues:

> Specifically, in connection with the purchase and attempted purchase of the firearms described below, Shelton W. Larkin, Jr. falsely stated on the Firearms Transaction Record (ATF Form 4473) that he was not an unlawful

2

user of a controlled substance, when in fact, he was an unlawful user of a controlled substance.

ECF No. 1.

Those allegations, however, omit essential elements of the offenses charged under §§ 922(a)(6) and 924(a)(2): the appropriate mens rea for all of the material elements of the charges. Specifically, the indictment omits any allegation that Mr. Larkin knew not just that his statement was false, but that it was likely to deceive the dealer, and that it was material to the sale.

To understand the importance of the missing scienter element, it's worth first taking a moment to review the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019). In *Rehaif*, the Court clarified the scienter requirement for a closely related statute, 18 U.S.C. § 922(g), which prohibits certain categories of people from possessing firearms. The Court noted there that it was not enough for the government to prove that the defendant knowingly possessed a gun. Instead, the government must *also* prove that the defendant knew he satisfied the criteria for whatever status made that possession unlawful. In that case, specifically, it meant the government had to prove not just that Rehaif knowingly possessed a gun, but also that he knew he was in the United States unlawfully. The Court's reasoning was based on the fundamental maxim that "Congress intends to require a defendant to possess a culpable mental state regarding *each* of the statutory elements that criminalize otherwise innocent conduct." *Id.* at 2195 (cleaned up and emphasis added) (citing *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1952)). Under that maxim, the Court explained, it had to presume that "Congress

3

*Federal Defender Services Of Wisconsin, Inc.*

intended to require the [g]overnment to establish the defendant knew he violated the material elements of § 922(g)," including the status element. *Rehaif*, 139 S. Ct. at 2196.

*Rehaif*'s reasoning applies with equal force here. Just like the § 922(g) statute at issue in *Rehaif*, the scienter requirement of § 922(a)(6) extends to each of its elements. Indeed, both § 922(g) – at least the version of it that was in effect when the Court decided *Rehaif* – and § 924(a)(6) share the very same scienter requirement outlined in their shared penalty section, § 924(a)(2). *See* 18 U.S.C. § 924(a)(2) (2019) (setting the penalty for "whoever knowingly violates subsection (a)(6) [or] . . . (g) . . . of section 922"). And it is that very scienter section that was at the heart of the *Rehaif* decision.

Under that reasoning, the "knowingly" requirement of § 922(a)(6) and its corresponding penalty section, § 924(a)(2), extend to all the "material elements" of the offense that "separate wrongful from innocent acts." *Rehaif*, 139 S.Ct. at 2197; *see also Wooden v. United States*, 142 S. Ct. 1063, 1076 (2022) (J., Kavanaugh, concurring) ("The deeply rooted presumption of *mens rea* generally requires the Government to prove the defendant's *mens rea* with respect to each element of a federal offense, unless Congress plainly provides otherwise.").

Here, those essential elements are: (1) a false or fictitious oral or written statement, (2) intended or likely to deceive the firearms dealer, (3) "with respect to any fact material to the lawfulness of the sale." 18 U.S.C. § 922(a)(6). Just as in *Rehaif*, courts must read a scienter requirement into *each* of those elements. That is, it is not enough that the statement is knowingly false. The buyer must also know that the falsehood is likely to deceive and that it is material to the lawfulness of the sale. That is the only permissible

4

*Federal Defender Services Of Wisconsin, Inc.*
Case 2:23-cr-00033-PP   Filed 05/19/23   Page 4 of 13   Document 15

reading of the statute under *Rehaif*, and it is the reading that best "advance[s] the purpose of scienter." 139 S.Ct. at 2197.

Imagine, for example, a woman who was being stalked and decided to buy a firearm to feel safer in her home. She may, understandably, be worried about giving out her full street address to a stranger, even if that stranger is a federally licensed firearms dealer. So, when she goes to buy her firearm, she lists almost all her information truthfully – except for her address, which she instead substitutes with the address for her local library just down the street. That fib was harmless, or so she believed, because she is not a person who is prohibited from possessing or purchasing a firearm and she knew that it is legal for a federally licensed dealer to sell a firearm to any non-prohibited person who resides within their state, which she does.

Pre-*Rehaif*, many courts would have likely found that the woman's actions violated § 922(a)(6) because she did, in fact: (1) make a false statement, (2) that she knew was false, (3) that was likely to deceive the federally licensed dealer, (4) about a fact material to the sale. *See United States v. Queen*, 408 F.3d 337, 339 (7th Cir. 2005) (holding that "an incorrect street address on an ATF 4473 Form is material" to the lawfulness of the sale under § 922(a)(6)).

But *Rehaif* cautioned precisely against such a narrow reading of scienter, noting that scienter requirements are meant to "advance th[e] basic principle of criminal law by helping to 'separate those who understand the wrongful nature of their act from those who do not." 139 S.Ct. at 2196. The woman in the above example did not understand her fib as wrongful because she – incorrectly – assumed that whether she lived at one

5

particular address or another just down the street, all that mattered was that she is a Wisconsin resident. She stands in stark contrast to someone who lies about their past criminal convictions, for example, hoping to circumvent their prohibition against purchasing firearms. Reading a "knowing" requirement into the materiality prong helps distinguish between those two very different acts in precisely the way *Rehaif* requires.

It may seem easy to dismiss the woman's mistake in the above example as a simple mistake of law, which typically does *not* insulate a person from criminal liability. But that, too, is an argument that the Supreme Court dispelled in *Rehaif.* There, the government argued that whether a person fell within the prohibited status of being "illegally or unlawfully in the United States" was a question of law, and thus any argument that the defendant did not know he fell within that status was mere "ignorance of the law," which is not a defense. 139 S. Ct. at 2198. But that maxim, the Court explained, applies only "where the defendant has the requisite mental state in respect to the elements of the crime but claims to be unaware of the existence of the statute proscribing his conduct." *Id.* (cleaned up). And it is not as universal as the government would often make it seem.

Instead, a mistake of law *can* be a defense where, as here, the mistake "negates the knowledge required to establish a material element to the offense." *Id.* (cleaned up). In *Liparota v. United States*, 105 S. Ct. 2084 (1985), for example, the Court held that in a prosecution for using or acquiring food stamps in any matter not authorized by law, the government had to prove not just that the defendant knowingly acquired the food stamps, but also that he knew his acquisition was against the law. *Id.* The Court rejected the dissent's argument that its holding was contrary to the general disdain for "mistake

6

*Federal Defender Services*
*Of Wisconsin, Inc.*
Case 2:23-cr-00033-PP    Filed 05/19/23    Page 6 of 13    Document 15

of law defenses," noting that it was not creating such a defense and was instead staying true to the statute's requirements, which inherently included a "legal element." *Id.* at 426, n.9. Much like the statute in *Liparota*, § 922(a)(6) also has a legal element of "materiality," but that cannot stop the Court from applying the appropriate mens rea to that element.

Turning back to the indictment here: it alleges only that the false statement was "knowing" – it does not attach the knowing scienter to any other element, and surely not the materiality element. Indeed, when outlining Mr. Larkin's specific acts, the indictment simply states that Mr. Larkin falsely stated that he was not an unlawful user "when, in fact, he was." ECF No. 1. Noticeably absent is any allegation that Mr. Larkin knew that fact was material – a fact that many laypeople may not know based on the changing social attitudes surrounding marijuana and its increasing legalization at the state level – and that his statement was likely to deceive the firearms dealer.

The government is likely to respond that, whatever the statute's elements, the indictment sufficiently alleges them by tracking the statutory language in its first more general paragraph. But it is not enough for an indictment to merely track the statutory language. The central question, instead, is whether the indictment *expressly* sets forth the necessary elements of the offense. *See United States v. Carll*, 105 U.S. 611, 612 (1881) ("In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence. . . ."). The "fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature," on the

7

*Federal Defender Services Of Wisconsin, Inc.*
Case 2:23-cr-00033-PP   Filed 05/19/23   Page 7 of 13   Document 15

mens rea requirement for example, "does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent." *Id.* Or, put another way, just because *Rehaif* requires this court to read a scienter requirement into the materiality element, that does not mean the statutory language alone is enough to satisfy the requirements that the indictment clearly and expressly lay out all the elements of the charged offense.

Because the indictment does not make it clear that the "knowingly" standard under §§ 924(a)(2) and 922(a)(6) reaches beyond the false statement, the indictment is legally insufficient as to all the charged counts. That is a fatal flaw. Accordingly, Mr. Larkin requests that the entirety of the indictment be dismissed.

## II. The indictment should also be dismissed because all the charges rely on a statute that violates Mr. Larkin's Second Amendment rights.

### A. The validity of the false statement charges against Mr. Larkin under § 922(a)(6) depend on the constitutionality of § 922(g)(3), which prohibits unlawful users of controlled substances from possessing firearms.

Mr. Larkin is charged with knowingly making a false statement to a federally licensed firearms dealer, in violation of § 922(a)(6). An essential element of that offense, of course, is that the purportedly false statement be material to the lawfulness of the sale. Here, Mr. Larkin's alleged misrepresentation was that he was *not* an unlawful user of marijuana. That statement is only material to the lawfulness of the sale if being an unlawful user would disqualify a person from purchasing or possessing a firearm. If no such prohibition exists, then it would be irrelevant to the lawfulness of the sale whether Mr. Larkin was a user, and the indictment would fail to state an offense because it could not

8

*Federal Defender Services*
*Of Wisconsin, Inc.*
Case 2:23-cr-00033-PP    Filed 05/19/23    Page 8 of 13    Document 15

allege that Mr. Larkin's alleged falsehood was material. In short, the legal sufficiency of Counts One through Eight turns on whether Mr. Larkin's purported status as an "unlawful user" of marijuana legally prohibits him from purchasing or possessing a gun.

Section 922(g)(3) currently *does* prohibit "unlawful users" of any controlled substance, including marijuana, from possessing firearms. But that prohibition cannot pass constitutional muster under the Supreme Court's recent *Bruen* decision. And without that underlying prohibition, Mr. Larkin's charges under § 922(a)(6) also fail. *See United States v. Holden*, No. 3:22-CR-30 RLM-MGG, 2022 WL 17103509, at *7 (N.D. Ind. Oct. 31, 2022) (dismissing indictment where defendant had "shown that § 922(n) facially violates the Second Amendment, and . . . without § 922(n) prohibiting him from receiving a firearm under indictment, his statement as to whether he was under indictment was immaterial for purposes of § 922(a)(6)"); *see also United States v. Quiroz*, No. PE:22-cr-00104-DC, 2022 WL 4352482, at *1 (W.D. Tex. Sept. 19, 2022) ("Defendant's motion hinges on the constitutionality of § 922(n) because if the provision is unconstitutional, then Defendant's false statement during the purchase of the firearm is immaterial.").

### B. Section 922(g)(3), in turn, is unconstitutional under *Bruen*.

The Second Amendment protects the rights of citizens to keep and bear arms. In *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court held that where the government seeks to impair that right, courts must engage in a two-part inquiry to determine if the gun regulation is constitutional. First, a court must ask whether the Second Amendment's plain text covers the person's conduct. *Id.* at 2126. If it does, "the Constitution presumptively protects that conduct," and at the second step of

9

*Federal Defender Services Of Wisconsin, Inc.*

*Bruen*, the government carries the burden of proving that the challenged gun regulation is "consistent with the Nation's historical tradition of firearm regulation." *Id.* This new framework reflects a marked shift from the "means-end" scrutiny that previously dominated Second Amendment jurisprudence. That is, the relevant question is no longer whether the government can cite to an important governmental interest that the law is narrowly tailored to advance. *Id.* at 2126-27. Instead, the inquiry is a historical one: can the government show that the challenged regulation is consistent with national historical practice?

This Court can make quick work of the first step of the *Bruen* inquiry here, which asks only whether the Second Amendment's plain text covers the conduct that is burdened. The answer is a resounding yes. Section 922(g)(3) prohibits Mr. Larkin from ever possessing a firearm, for any purpose, in any location. That burdens a quintessential right protected by the Second Amendment: the right to possess a firearm, particularly for self-defense in one's own home. *District of Columbia v. Heller*, 554 U.S. 570, 628-29 (2008) ("[T]he inherent right to self defense has been central to the Second Amendment right.").

That is enough to place the burden on the government to prove that § 922(g)(3) is consistent with our nation's historical tradition of firearm regulation – a burden the government cannot meet here. Because the societal problem purportedly addressed by the challenged regulation (the perceived danger of combining drug use and firearms) is not new, unprecedented, or the result of a dramatic technological shift, the historical analysis should be "fairly straightforward." *Bruen*, 142 S. Ct. at 2131. The central question is whether our nation ever adopted a "distinctly similar" regulation in its history to

*Federal Defender Services*
*Of Wisconsin, Inc.*

address the problem. If not, "[t]he lack of [such] distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.*

Though the problem of drug use and abuse pre-dates the founding of this country, the government would be hard pressed to find an analogous blanket prohibition on the possession of firearms by those who use drugs – particularly a drug with the ubiquity and social acceptance of marijuana – in our nation's early history. Moreover, as one court recently reasoned, § 922(g)(3) stands in stark contrast to historical laws disarming felons or dangerous individuals. *See United States v. Connelly*, No.22-cr-229, 2023 WL 2806324, at *11 (W.D. Tex. Apr. 6, 2023). The historical practice of disarming dangerous or "unlawful" individuals, the court explained, "mainly involve[s] disarming those convicted of serious crimes after they have been afforded criminal process." *Id.* Section 922(g)(3), on the other hand, "disarms those who engage in criminal conduct that would give rise to misdemeanor charges, without affording them the procedural protections enshrined in our criminal justice system." *Id.* Those differences are significant, and they mean § 922(g)(3) lacks sufficiently similar historical analogues and is thus unconstitutional under *Bruen*. *See United States v. Harrison*, No. 22-cr-00328, 2023 WL 1771138, at *6 (W.D. Okla. Feb. 3, 2023) (dismissing indictment because government had "not identified a single historical law that is 'distinctly similar' to § 922(g)(3)").

And because § 922(g)(3)'s prohibition is unconstitutional, Mr. Larkin's purportedly false statement about whether he was an unlawful user is not material to the

lawfulness of firearm sales charged in the indictment. This provides a second, independent, reason the indictment should be dismissed in its entirety.

## Conclusion

In many ways, Shelton Larkin perfectly captures the overbreadth of §§ 922(a)(6) and 922(g)(3). Again, despite having no felony convictions, no misdemeanor convictions, no juvenile adjudications, no arrests, no allegations of violence in his past, and not so much as a municipal citation for weed possession, Mr. Larkin continues to be denied rights that are protected under the Second Amendment. But this Court can vindicate his rights. Using the appropriate mens rea standard, Mr. Larkin's indictment is legally insufficient to state an offense and should be dismissed. Independently, but just as importantly, this Court should also hold the government to its burden under *Bruen* of proving that the relevant statutes pass constitutional muster – a burden the government will not be able to carry because no historical analogues that are "distinctly similar" to § 922(g)(3) exist. For those reasons, Mr. Larkin respectfully asks this Court to dismiss the indictment in its entirety.

Dated at Milwaukee, Wisconsin, this 19th day of May, 2023.

                        Respectfully submitted,

                        */s/ Dennise Moreno*
                        Dennise Moreno, NY Bar #5797154
                        Federal Defender Services
                           of Wisconsin, Inc.
                        411 E. Wisconsin Avenue, Suite 2310
                        Milwaukee, WI  53202
                        Tel.  (414) 221-9900
                        Email:  dennise_moreno@fd.org

                        *Counsel for Defendant,* Shelton Larkin