UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff*,

    *vs.*                                                  Case No. 23-cr-33

SHELTON LARKIN,

    *Defendant*.

**REPLY IN SUPPORT OF
MOTION TO DISMISS INDICTMENT**

Before turning to the substance of Mr. Larkin's two legal claims, it's worth taking a moment to clarify some of the factual background of this case that the government discussed in its opposition to Mr. Larkin's motion to dismiss the indictment.

In February 2023, Shelton Larkin was charged with federal firearm offenses in an eight-count indictment. By then, Mr. Larkin – who has no felony, misdemeanor, or even juvenile convictions – had not possessed or purchased a firearm for nearly a year and a half. Instead, his charges stem from firearms he purchased back in 2021. Specifically, the government contends that when Mr. Larkin purchased those firearms, he falsely stated that he was not an unlawful user of marijuana. The government argues that Mr. Larkin was, in fact, an unlawful user because he "admitted that he smoked a few times a week for the past three years, which included the time period in which he purchased all the firearms described above." ECF No. 18 at 4.

*Federal Defender Services
Of Wisconsin, Inc.*

But in paraphrasing, the government misstates Mr. Larkin's admission in a quite material way. Mr. Larkin told the agents who went to interview him at his mother's house in September 2022 – nearly an entire year after the purchases at issue here – that he *currently* smoked marijuana "a few times a week." Agents then asked him, "how long have you been smoking?," to which Mr. Larkin responded, "probably like three years." At no point did Mr. Larkin tell agents he "smoked weed a few times a week for the past three years."

That distinction matters, of course, because the relevant question is not how much marijuana Mr. Larkin smoked at the time he was interrogated. The relevant question is whether he met the strict definition of an unlawful user at the time he purchased the guns – a year before he was interrogated. *See United States v. Yancey*, 621 F.3d 681, 687 (7th Cir, 2010) (requiring evidence that a person's drug use is "habitual" and "contemporaneous to the gun possession" to make someone an "unlawful user").

The government also claims that Mr. Larkin, "admitted that he had sold a couple of firearms to a person recently arrested for homicide." ECF No. ay 18. But that, again, misstates what Mr. Larkin told agents. When asked whether he still possessed any firearms, Mr. Larkin told agents he did not because he had sold them after he lost his job and needed money. When agents asked *who* Mr. Larkin sold the firearms to, he told them he sold them to an acquaintance's boyfriend – Jhony Marchena. Mr. Larkin told agents he didn't really know Mr. Marchena, and he showed agents the social media messages where the two had arranged for the sales. Larkin sold the guns for little-to-no personal profit because he was just trying to recoup the money he had spent on them. Though the

2

*Federal Defender Services*
*Of Wisconsin, Inc.*

government writes that Mr. Marchena had "recently [been] arrested for a homicide," the defense has not received any reports in discovery relating to Mr. Marchena. A quick review of Wisconsin Circuit Court online records, however, shows that Mr. Marchena was arrested in September 2022 – a few weeks before Mr. Larkin's interrogation – but not for homicide. Mr. Marchena was instead charged with possessing a firearm after having previously been adjudicated delinquent of a felony. *See* Wisconsin CCAP, 2022CF003606.[1] At the time Mr. Larkin sold the gun, Mr. Marchena did not have any felony convictions that would have appeared through a public CCAP search.[2] Mr. Marchena was released on bond after his initial appearance in September 2022, and has remained in the community ever since.[3] But in any event, the details of that sale are irrelevant here. Mr. Larkin is not charged with being a straw purchaser – the evidence reflects, after all, that he did initially purchase the firearms for himself, and selling firearms on the secondary market, like he ultimately did, is not unlawful. *See United States v. Abramski*, 573 U.S. 169, 185 (2014) ("Congress decided to regulate dealers' sales, while leaving the secondary market for guns largely untouched.").

Instead, the central question here is the lawfulness of Mr. Larkin's purchase of those firearms back in 2021 and whether this criminal prosecution violates his constitutional rights. This Court should find that it does in two distinct ways.

---

[1] Available at: https://wcca.wicourts.gov/caseDetail.html?caseNo=2022CF003603&countyNo=40&index=0&mode=details.
[2] His 2022 charge is for possessing a gun despite a juvenile felony adjudication. But that underlying juvenile adjudication would not appear to a member of the public searching his name on CCAP for previous convictions.
[3] *Id.*

3

*Federal Defender Services Of Wisconsin, Inc.*
Case 2:23-cr-00033-PP    Filed 07/17/23    Page 3 of 11    Document 21

I. **The indictment fails to sufficiently allege a crime, violating Mr. Larkin's Fifth and Sixth Amendment rights.**

The Court should dismiss all counts of the indictment because they suffer from the same fatal defect: they omit an essential element of the offense. Specifically, the indictment fails to allege that Mr. Larkin not only knew that his statement was false, but also that he knew it was likely to deceive the dealer and that it was material to the sale. The government does not dispute that the indictment fails to allege that additional knowledge. Instead, it argues that *Rehaif* does not require the government to prove knowledge of materiality at all, relying on two general arguments.

First, the government argues that "the two court of appeals that have considered the precise question have determined that *Rehaif* does not apply to section 922(a)(6) at all." ECF No 18 at 5. But neither of the cases the government cites substantively engage with *Rehaif*'s reasoning. In *United States v. Kaspereit*, 994 F.3d 1202 (10th Cir. 2021), for example, the Tenth Circuit summarily refused to apply *Rehaif* to § 922(a)(6), noting simply that "the Supreme Court limited the scope of its holding to prosecutions under 18 U.S.C. § 922(g)," and did not change existing precedent on the scienter requirement for § 922(a)(6). *Id.* at 1207.[4]

---

[4] Notably, for that existing precedent, the Tenth Circuit cited to *Dixon v. United States*, 548 U.S. 1, 6 (2006) – a case that did not directly consider whether the "knowingly" requirement in § 922(a)(6) extends beyond the false statement element, to the materiality element. In fact, the Supreme Court would have had little opportunity to consider that question in *Dixon* even if it *had* been raised because the defendant there had "*testified* that she knew she was breaking the law when, as an individual under indictment at the time, she purchased a firearm." *Id.* (emphasis added). By defendant's own admission, then, the government in *Dixon* would have met the additional scienter requirement that Larkin advocates for here anyway.

4

*Federal Defender Services*
*Of Wisconsin, Inc.*

But the Tenth Circuit's conclusory claim that *Rehaif* does not extend beyond § 922(g) cannot carry the day. It takes only a quick reading of *Rehaif* to see that the Court's analysis there relied on certain – universal – axioms of statutory interpretation. Most fundamentally, the *Rehaif* Court relied on the "longstanding presumption, traceable to common law, that Congress intends to require a defendant to possess a culpable mental state regarding *each* of the statutory elements that criminalize otherwise innocent conduct." *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019) (internal quotation marks omitted and emphasis added). This "presumption in favor of scienter" was not tied specifically to § 922(g), nor any other statute for that matter. It is a generalized maxim, and one that should apply any time a court is tasked with interpreting a statute. That maxim carries even more weight here because the scienter requirement that the Supreme Court was interpreting in *Rehaif* stemmed from § 924(a)(2) – the very same statute and subsection that provides the scienter requirement for § 922(a)(6).

The next step of the Supreme Court's analysis in *Rehaif* was similarly based on a universal principle. The Court noted that as "a matter of ordinary English grammar, we normally read the statutory term 'knowingly' as applying to all subsequently listed elements of the crime." *Id.* at 2196 (internal quotation marks omitted). That analysis, again, deals with how courts should interpret statutes in general, it was not tied to any specifics of § 922(g).

All of that is to say that nothing in the Tenth Circuit's cursory analysis in *Kaspereit* speaks to why those same universal tools of interpretation that the Supreme Court used in *Rehaif* should not be applied here. And when those same tools are applied, the outcome

5

is clear: just as in *Rehaif*, the scienter element of § 924(a)(2) must reach every element of § 922(a)(6). That means that the government must allege and prove not just that Mr. Larkin knew his statement was false, but also that he knew it was material to the sale. Because the government did not allege that here, all counts of the indictment must be dismissed.

The second case cited by the government, *United States v. Diaz*, 989 F.3d 390 (5th Cir. 2021) does little to change that analysis. There, the defendant was being prosecuted not for making a false statement directly, but for conspiring to make a false statement. *Diaz* was, thus, charged with violating 18 U.S.C. § 922(a)(6), but not its typical penalty section, § 924(a)(2). Instead, *Diaz* was charged under the general federal conspiracy statute, 18 U.S.C. § 371. That matters because the "knowingly" scienter requirement at issue here (and at issue in *Rehaif*) comes from § 924(a)(2) – a statute expressly not at issue in *Diaz*.

In any event, the argument the Fifth Circuit rejected in *Diaz* is also wholly distinct from the one Larkin raises. There, the defendant argued that the government had to prove that she knowingly made a false statement to a firearms dealer and that she *knew* the dealer was federally licensed. That argument, however, is inconsistent with *Rehaif*, which explicitly exempted "jurisdictional elements" from the scienter analysis. *See Rehaif*, 139 S. Ct. at 2196 ('No one here claims that the word 'knowingly' modifies the statute's jurisdictional element."). As the Court explained, "[j]urisdictional elements do not describe the evil Congress seeks to prevent, but instead simply ensure that the Federal Government has the constitutional authority to regulate the defendant's conduct (normally, as here, through its Commerce Clause power)." *Id.* (internal quotation marks

6

*Federal Defender Services*
*Of Wisconsin, Inc.*
Case 2:23-cr-00033-PP    Filed 07/17/23    Page 6 of 11    Document 21

omitted). But unlike the element that the firearms dealer be federally licensed, the materiality element is substantive and not jurisdictional. It goes to the evil Congress sought to prevent: not just any false statements, but *material* false statements. The cases cited by the government, thus, cannot absolve this Court of its responsibility to interpret what scienter requirement § 922(a)(6) and §924(a)(2) demand.

The government's second argument – that even if *Rehaif* did apply, it would not require that Larkin "knew that his status prohibited him from possessing a firearm," requiring simply that he knew he held the status, ECF No. 18 at 5 – is similarly inapposite. That argument basically boils down to the age-old maxim that ignorance of the law is not a defense. But again, Larkin does not claim ignorance of the law as an affirmative defense. *See* ECF No. 15 at 6-7. Unlike many other criminal statues, § 922(a)(6) specifically includes materiality as an element. It requires not just *any* false statement to a firearms dealer, it requires a *material* false statement. That distinction is important because the statute would otherwise cover largely innocent behavior – like fibbing and telling the firearms salesman that you've been faithfully sticking to your diet when you haven't– rather than the evil Congress actually intended to criminalize. Reading the statute's scienter requirement to apply to that material materiality element is not akin to allowing a defense for mistake or ignorance of the law. Instead, it is requiring the government to allege and prove an essential element of the offense. That sets Mr. Larkin's argument apart from many other *Rehaif*-style challenges that the government dismisses in its opposition.

The government has provided this Court no reason to refrain from applying *Rehaif*'s tools of statutory interpretation to § 922(a)(6) and its penalty section, § 924(a)(2). Through

*Federal Defender Services*
*Of Wisconsin, Inc.*

those tools, the necessary conclusion is clear: the statutes require that Mr. Larkin knew his statements were material to the lawfulness of the sale. Because the indictment fails to allege that essential element, the Court should dismiss it in its entirety.

### II. The indictment should also be dismissed because the charges violate Mr. Larkin's Second Amendment rights.

The government does not attempt to meet its burden of showing that a blanket ban on the possession of firearms by "unlawful users" passes constitutional muster. *See Atkinson v. Garland*, 70 F.4th 1018, 1019 (7th Cir. 2023) (noting that under *Bruen*, "the government bear[s] the burden of affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms"). Instead, the government relies on the recent decision by the Seventh Circuit in *United States v. Holden*, 70 F.4th 1015 (2023), to argue that the underlying constitutionality of § 922(g)(3) is irrelevant to Mr. Larkin's charges for making a false statement under § 922(a)(6).

Mr. Larkin maintains that *Holden* was wrongfully decided. The precedent *Holden* relied on – largely about false statements under § 1001 – does not deal with the wholly separate statute at issue here, § 922(a)(6). Unlike more general false statement charges, § 922(a)(6) explicitly requires that the false statement be material "*to the lawfulness of the sale*" – making the lawfulness of the underlying prohibition a central issue. If the government cannot lawfully prohibit Mr. Larkin from possessing, purchasing, or receiving a firearm based on his marijuana use, his statement regarding whether he was

8

*Federal Defender Services Of Wisconsin, Inc.*

an "unlawful user" would not be material because even a truthful answer could not have stopped him from purchasing a firearm. That explicit materiality element, thus, sets § 922(a)(6) quite apart. But Mr. Larkin acknowledges, of course, that this Court is bound by Seventh Circuit precedent.

However, an issue that *Holden* did not address and left open for this Court's consideration is whether the government's and the Seventh Circuit's reading renders § 926(a)(6) itself unconstitutional.[5] That is, if § 926(a)(6) allows the government to criminally prosecute any false statements when purchasing a firearm – even ones that are only material because of an unconstitutional statute – then § 926(a)(6) is itself an infringement on core Second Amendment rights. Under the broad reading of the government, Congress could legislate any number of clearly unconstitutional prohibitions – prohibiting women from purchasing firearms or prohibiting certain races from purchasing firearms., for example An aggrieved citizen would then be forced to pursue an affirmative lawsuit challenging that prohibition or risk criminal prosecution for checking the wrong box on the ATF Form when purchasing a firearm. That in and of itself burdens the Second Amendment right to keep and bear arms. It doesn't matter if that burden is only temporary – just while the aggrieved citizen seeks remedial action from the Courts. *Bruen* does not allow for means-end tests at all. So the question is not how significant of a burden the statute places on Second Amendment rights. Instead, the

---

[5] Although in his opening brief, Mr. Larkin focused his challenge on the underlying constitutionality of § 922(g)(3), his reply now offers a response to the government's position and the Seventh Circuit's recent *Holden* opinion, which was issued well after Mr. Larkin filed his opening brief.

9

*Federal Defender Services*
*Of Wisconsin, Inc.*
Case 2:23-cr-00033-PP   Filed 07/17/23   Page 9 of 11   Document 21

question is whether the statute burdens conduct that falls within the Second Amendment at all, and if so, whether there is a sufficient historical analogue for that type of burden. Here, the government would be hard-pressed to find a historical tradition of broadly and categorically prohibiting the possession of firearms on an unconstitutional basis until the aggrieved seeks judicial action.

Put simply, either § 922(a)(6) requires that the underlying prohibition be constitutional, as Mr. Larkin proposes, or the statute itself imposes an untenable and unconstitutional burden on Mr. Larkin's Second Amendment rights.

## Conclusion

For these reasons, Mr. Larkin respectfully asks this Court to dismiss the indictment in its entirety.

Dated at Milwaukee, Wisconsin, this 17th day of July, 2023.

>Respectfully submitted,
>
>*/s/ Dennise Moreno*
>Dennise Moreno, NY Bar #5797154
>Federal Defender Services
>    of Wisconsin, Inc.
>411 E. Wisconsin Avenue, Suite 2310
>Milwaukee, WI 53202
>Tel. (414) 221-9900
>Email: dennise_moreno@fd.org
>
>*Counsel for Defendant,* Shelton Larkin