UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

                                        Case No. 23-cr-33-pp

    v.

SHELTON W. LARKIN, JR.,

                Defendant.

---

**ORDER OVERRULING DEFENDANT'S OBJECTIONS (DKT. NO. 31), ADOPTING JUDGE DUFFIN'S REPORT AND RECOMMENDATION (DKT. NO. 22), AND DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT (DKT. NO. 15)**

---

The indictment alleges that on eight occasions, in connection with the acquisition of firearms from federal licensees, defendant Shelton Larkin knowingly made a false and fictious statement intended and likely to deceive the licensees, by representing on a Firearms Transaction Record (ATF Form 4473) that he was not an unlawful user of a controlled substance. Dkt. No. 1. The defendant has moved to dismiss the indictment on two grounds: (1) the charges violate the defendant's Fifth and Sixth Amendment rights by failing to state an offense under 18 U.S.C. §§922(a)(6) and 924(a)(2); and (2) even if the indictment legally states an offense, the charges alleged in the indictment violate the Second Amendment under the legal framework enunciated by the Supreme Court in New York State Rifle & Piston Ass'n v. Bruen, 597 U.S. ____, 142 S. Ct. 2111 (2022). Dkt. No. 15.

1

Magistrate Judge William E. Duffin has recommended that this court deny the motion because the indictment sufficiently tracks the language of the statutes the defendant is alleged to have violated and the Seventh Circuit foreclosed the defendant's Second Amendment argument in United States v. Holden, 70 F.4th 1015 (7th Cir. 2023). Dkt. No. 22. The court has reviewed the parties' arguments *de novo*; it adopts Judge Duffin's recommendation and denies the motion to dismiss.

## I. Briefing Before the Magistrate Judge

### A. Defendant's Motion (Dkt. No. 15)

In his original motion, the defendant first argued that the indictment omits the *mens rea* for §§922(a)(6) and 924(a)(2). Dkt. No. 15 at 3. He asserted that the government was required to allege more than that the defendant knew the statement he made on the ATF Form 4473 (that he was not an unlawful user of a controlled substance) was false. Id. The defendant cited Rehaif v. United States, 588 U.S. ____, 139 S. Ct. 2191, 2195 (2019) for its holding that, with respect to a different statute (18 U.S.C. §922(g)), "Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct." Id. at 2195. The defendant argued that this reasoning applies equally to §922(a)(6) because §922(a)(6) and §922(g) have the same scienter requirement in their shared penalty section. Id. at 4 (citing 18 U.S.C. §924(a)(2)). The defendant maintained that to prove the charges of making false statements in connection with the purchase of firearms, the government was required to allege that the defendant

2

(1) knowingly made a false or fictitious oral or written statement; (2) knew the statement was likely to deceive the federally-licensed firearms dealer; and (3) knew that that the false statement was material to the lawfulness of the sale. Id.

Second, the defendant argued that the validity of the charges alleging that he violated 18 U.S.C. §922(a)(6) by making false statements depended on the constitutionality of 18 U.S.C. §922(g)(3), the statute which prohibits unlawful users of controlled substances from possessing firearms. Id. at 8. He reasoned that his statement on the ATF Form 4473 that he was not an unlawful user of controlled substances would be "material" to the lawfulness of the firearm sales only if it would disqualify him from purchasing or possessing a firearm. Id. While conceding that §922(g)(3) currently prohibits unlawful users of controlled substances (including marijuana) from possessing firearms, the defendant asserted that that "prohibition cannot pass constitutional muster" under Bruen. Id. He argued that because §922(g)(3) is, in his view, unconstitutional, the fact that he made a false statement about whether he met the requirement for §922(g)(3)'s prohibition on possession of firearms by unlawful users of controlled substances was not a fact "material" to the lawfulness of the sales. Id.

In support of this second argument, the defendant analyzed §922(g)(3) and concluded that it violates the Second Amendment under the framework enunciated in Bruen. Id. at 9. He contended that the plain text of the Second Amendment covers the conduct that §922(g)(3) burdens (the possession or

3

receipt of firearms in or affecting commerce). Id. at 10. And he argued that the government could not meet its burden to prove that §922(g)(3) is "consistent with the Nation's historical tradition of firearm regulation." Id. (citing Bruen, 142 S. Ct. at 2126). He asserted that the government would be "hard pressed to find an analogous blanket prohibition on the possession of firearms by those who use drugs—particularly a drug with the ubiquity and social acceptance of marijuana—in our nation's early history." Id. at 11. And he contended that the effect of §922(g)(3) is not to disarm dangerous or unlawful individuals, but to disarm, among others, those who engage in conduct that would result in only misdemeanor charges, without procedural protection. Id. (citations omitted).

B.     Government's Response (Dkt. No. 18)

The government responded that Rehaif does not require knowledge of legal materiality under 18 U.S.C. §922(a)(6). Dkt. No. 18 at 5. The government cited to Fifth and Tenth Circuit cases that have rejected the same arguments made by the defendant. Id. (citing United States v. Kaspereit, 994 F.3d 1202, 1207 (10th Cir. 2021); United States v. Diaz, 989 F.3d 390, 394 (5th Cir.), cert. denied, 142 S. Ct. 368 (2021)). The government argued that even if Rehaif applied to §922(a)(6), the defendant's argument still would lack merit under Seventh Circuit precedent. Id. According to the government, Rehaif requires the defendant to know his status (that he is an unlawful user of controlled substances) but does not require him to know the criminal prohibition that renders people with that status unable to buy firearms. Id. (citing United States

4

v. Cook, 970 F.3d 866, 880 (7th Cir. 2020); United States v. Maez, 960 F.3d 949, 954 (7th Cir. 2020)).

The government disputed the defendant's assertion that the validity of the §922(a)(6) false statement charges was dependent on the constitutionality of §922(g)(3) (which prohibits possession or receipt of firearms by unlawful users of controlled substances). Id. at 6. The government pointed out that in June 2023, the Seventh Circuit had held "that a charge under 18 U.S.C. §922(a)(6) is valid regardless of a constitutional challenge to the underlying legal requirement about which the defendant was lying." Id. (citing Holden, 70 F.4th 1015). Id. The government quoted the following language from the Holden decision:

> Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood.

Id. (Holden, 70 F.4th at 1016, citations omitted). The government asserted that the case at bar is indistinguishable from Holden, and argued that if the defendant wanted to challenge the constitutionality of §923(g)(3)—"a statute he is not charged with violating"—the defendant could have filed a civil lawsuit. Id. at 6-7.

C.    Defendant's Reply (Dkt. No. 21)

In his reply brief in support of the original motion, the defendant began by "taking a moment to clarify some of the factual background of this case that the government discussed in its opposition . . . ." Dkt. No. 21 at 1. The defendant asserted that at the time of the federal indictment (February 2023),

5

he had no felony, misdemeanor or juvenile convictions. Id. He pointed out that the charges stemmed from firearms he'd purchased in 2021. Id. He stated that the government had alleged that he was an unlawful user of marijuana only because he'd admitted to law enforcement that he'd smoked a few times a week for the previous three years. Id. (citing Dkt. No. 18 at 4). The defendant contended, however, that he had made that admission during a September 2022 interview by agents at his mother's house, "nearly a year after the purchases at issue here." Id. at 2. The defendant indicated that what he actually told the agents at that September 2022 interview was that he "*currently*" smoked marijuana "a few times a week," and when the agents asked him how long he'd been smoking, he responded, "probably like three years." Id. The defendant insisted that he never told the agents that he "smoked weed a few times a week for the past three years." Id. The defendant argued that this distinction matters, because the relevant question is not how much marijuana the defendant was smoking at the time of the September 2022 interview, but "whether he met the strict definition of an unlawful user at the time he purchased the guns—a year before he was interrogated." Id.

The defendant also disputed the government's representation that he had admitted that he sold guns to someone who'd been arrested for homicide. Id. The defendant explained that what he told law enforcement was that he no longer had any of the guns he'd bought from the licensed firearms dealers because he'd sold them, and he identified an acquaintance's boyfriend as the person to whom he'd sold the guns. Id. The defendant asserted that he had

6

received no discovery about this individual (the acquaintance's boyfriend), and that online state-court records indicated that the person had been arrested a few weeks before the defendant's interrogation, but not for homicide. Id. at 3. Regardless, the defendant asserted that he had not been charged with a straw purchase, so the government's recitation of the circumstances of his sales of the guns were irrelevant. Id.

Turning to the legal issues, the defendant argued that neither of the appellate court decisions cited by the government "substantively engage with Rehaif's reasoning." Id. at 4. He contended that the Tenth Circuit's decision "summarily refused to apply Rehaif to §922(a)(6)." Id. The defendant asserted that the decision in Rehaif relied on "certain—universal—axioms of statutory interpretation." Id. at 5. He argued that one of those axioms was the "longstanding presumption, traceable to common law, that Congress intends to require a defendant to possess a culpable mental state regarding each of the statutory elements that criminalize otherwise innocent conduct.'" Id. (quoting Rehaif, 139 S. Ct. at 2195). The defendant opined that the Supreme Court had not tied this "presumption in favor of scienter" to §922(g) or any other specific statute. Id. The defendant identified the second axiom of statutory interpretation as the Rehaif Court's statement that "as a matter of ordinary English grammar, we normally read the statutory term 'knowingly' as applying to all subsequently listed elements of the crime." Id. (quoting Rehaif, 139 S. Ct. at 2916). He argued that the Tenth Circuit had not applied these axioms of statutory interpretation; he maintained that if this court were to do so, it would

7

be forced to agree with him that the indictment is constitutionally infirm. Id. at 5-6.

The defendant maintained that the Fifth Circuit case cited by the government involved a defendant prosecuted for *conspiring* to make a false statement. Id. at 6. The defendant asserted that this distinction was important, because he argued that the "knowingly" requirement for §922(a)(6) comes from 18 U.S.C. §924(a)(2), "a statute expressly not at issue" in the Fifth Circuit case. Id. The defendant also contended that the defendant in the Fifth Circuit case had made a different argument from the one the defendant was making here—an argument that the defendant asserted was directly at odds with the Supreme Court's holding in Rehaif that jurisdictional elements are exempt from the scienter analysis. Id.

As for the government's argument that Rehaif required only that the defendant know his status as an unlawful user of controlled substances, the defendant argued that unlike many other criminal statutes, §922(a)(6) includes a materiality requirement. Id. at 7. The defendant maintained that not just any false statement to a licensed firearms dealer would give rise to a violation of §922(a)(6); the false statement must be *material* to the sale of the firearm. Id. The defendant asserted that that fact set his argument apart from other "*Rehaif*-style challenges that the government dismisses in its opposition." Id.

As for the defendant's argument that a blanket ban on possession of firearms by unlawful drug users is unconstitutional, the defendant asserted that the government did not "attempt" to meet its burden to show otherwise. Id.

8

at 8. He argued that the government had chosen instead to rely on the Seventh Circuit's decision in <u>Holden</u>. <u>Id.</u> The defendant argued that the Seventh Circuit "wrongfully decided" <u>Holden</u>. <u>Id.</u> According to the defendant, the Seventh Circuit erred in relying on precedent about false statements under §1001 and failed to "deal with the wholly separate statute at issue here, §922(a)(6)." <u>Id.</u> The defendant reasoned that "[u]nlike more general false statement charges, §922(a)(6) explicitly requires that the false statement be material '*to the lawfulness of the sale*'—making the lawfulness of the underlying prohibition a central issue." <u>Id.</u> The defendant contended that, if it is unconstitutional for the government to prohibit the defendant from possessing, purchasing or receiving a firearm on the basis of the fact that he uses marijuana, then his statements regarding whether he was an "unlawful user" were immaterial to the lawfulness of the sale because even a truthful statement about his marijuana use would not have prohibited his purchasing the firearms. <u>Id.</u> at 8-9. Although he made these arguments, the defendant "acknowledge[d], of course, that this Court is bound by Seventh Circuit precedent." <u>Id.</u> at 9.

Finally, the defendant argued that <u>Holden</u> did not address whether "the government's and the Seventh Circuit's reading renders §926(a)(6)[1] itself unconstitutional." <u>Id.</u> The defendant asserted that if §922(a)(6) allows the government to prosecute someone who, when purchasing a firearm, makes false statements that are material only because of an unconstitutional statute,

---

[1] This appears to be a typographical error; the defendant appears to have meant to reference §922(a)(6).

"then §92[2](a)(6) is itself an infringement on core Second Amendment rights."

Id.[2] The defendant predicted a slippery slope, where Congress could legislate "clearly unconstitutional prohibitions" such as prohibiting the purchase of firearms based on race or gender, forcing the purchaser to "pursue an affirmative lawsuit challenging that prohibition or risk criminal prosecution for checking the wrong box on the ATF Form when purchasing a firearm." Id. The defendant argued that this set of circumstances would burden a person's Second Amendment rights, even if only temporarily. Id. The defendant concluded, "either § 922(a)(6) requires that the underlying prohibition be constitutional . . . or the statute itself imposes an untenable and unconstitutional burden on [the defendant's] Second Amendment rights." Id. at 10.

## II.  Magistrate Judge Duffin's Report and Recommendation (Dkt. No. 22)

In a six-page report and recommendation, Judge Duffin summarily rejected the defendant's Second Amendment argument as foreclosed by the Seventh Circuit's decision in Holden. Dkt. No. 22 at 1-2. Judge Duffin recounted that in Holden, "the court held that, regardless of whether the

---

[2] The defendant appears to have raised this argument for the first time in his reply brief, which normally would mean that he waived it. See United States v. Cruse, 805 F.3d 795, 818 n.7 (7th Cir. 2015) (citing Damato v. Sullivan, 945 F.2d 982, 988 n.5 (7th Cir. 1991)). But the defendant filed his opening brief on May 19, 2023, dkt. no. 15, and the Seventh Circuit did not issue its decision in Holden until June 16, 2023—about a month later. The defendant appears to have raised this argument—that §922(a)(6) itself, and not the underlying statute prohibiting unlawful drug users from possessing firearms, violates the Second Amendment—after realizing that his original argument was foreclosed by Holden.

10

underlying firearm restriction was consistent with the Second Amendment, there was no constitutional right to make a false statement." Id. at 2. Judge Duffin observed that the defendant had not been charged with being an unlawful user of a controlled substance in possession of a firearm in violation of §922(g)(3), but with making a false statement; he concluded that the Second Amendment was not implicated when a defendant is charged with making a false statement in violation of §922(a)(6). Id.

As for the defendant's assertion that Holden was wrongfully decided, Judge Duffin characterized it as obvious that he had "no authority to disregard a holding of the court of appeals," and he opined that the defendant's "attempts to fit his arguments through perceived cracks in the Holden decision are unavailing." Id. As examples, Judge Duffin pointed to the defendant's argument that if prohibiting unlawful users of controlled substances to acquire and possess guns violates the Second Amendment then asking gun purchasers whether they are unlawful users of controlled substances also would violate the Second Amendment. Id. He also identified the defendant's argument that forcing a user of unlawful drugs to go to court "to get the prohibition (and the question on the form) declared unconstitutional is an unconstitutional burden in and of itself." Id. Judge Duffin characterized these arguments as "novel," and opined that they run contrary "to both the well-established method of enforcing constitutional rights and the court of appeals' pronouncement of how a person in Holden's (or [the defendant's]) position should have proceeded." Id. at 2-3.

11

As for the defendant's argument that the indictment did not set out the *mens rea* of the offense, Judge Duffin first quoted the language of the indictment. Id. at 3. He then quoted the language of §922(a)(6). Id. Finally, he quoted 18 U.S.C. §924(a)(2), the penalty section of the firearms statute. Id. at 4. Judge Duffin characterized <u>Rehaif</u> as dealing with "the question of what the government must prove at trial rather than the sufficiency of the indictment." Id. As to the standard for analyzing a challenge to the sufficiency of an indictment, Judge Duffin quoted <u>United States v. White</u>, 610 F.3d 956, 958 (7th Cir. 2010), which held that an indictment is sufficient if it states all the elements of the crime, informs the defendant of the nature of the charges so that he can prepare a defense and allows the defendant to plead the judgment as a bar to future prosecutions. Id. Judge Duffin concluded that because the indictment in this case tracks the language of the relevant statutes, the defendant's dispute about what that language means or how it should be interpreted was not an appropriate basis for dismissing the indictment, but an issue to be raised, "for example, in conjunction with jury instructions at trial." Id. at 4-5.

In the alternative, Judge Duffin rejected the argument that the government was required to prove (and the indictment was required to allege) that the defendant knew "both that his false statement was likely to deceive and that it was material to the lawfulness of the sale." Id. (citing <u>Kapereit</u>, 994 F.3d at 1207 and <u>Diaz</u>, 989 F.3d at 393). Citing Seventh Circuit precedent, Judge Duffin found that the government needed to prove only that the

defendant "knew his status—here, that he was an unlawful user of a controlled substance." Id. (citing Cook, 970 F.3d at 880).

## III. Briefing Before This Court

### A. Defendant's Objection (Dkt. No. 31)

In his objection to Judge Duffin's recommendation, the defendant reiterates what he told Judge Duffin in his reply brief: that he has no felony convictions, no misdemeanor convictions, no juvenile adjudications and no "arrests of any kind in his past." Dkt. No. 31 at 1. He asserts that despite these facts, he "finds himself federally charged with eight counts of making 'false and fictitious' written statements when he purchased firearms from a federally license dealer back in 2021, in violation of 18 U.S.C. §922(a)(6)." Id. He reiterates that the government has alleged that he lied on the ATF Form 4473 when he marked the box indicating that he was not an unlawful user of, or addicted to, marijuana. Id.

Turning to his argument that the indictment does not allege the necessary scienter, the defendant characterizes the issue as "whether the indictment here meets [the] basic requirements and, specifically, whether it alleges all of the elements of the charged offense." Id. at 2. He says that this court must start by determining what those elements actually are. Id. The defendant reasons:

> In *Rehaif*, the Supreme Court clarified the scienter requirement of a closely related firearm statute: 18 U.S.C. § 922(g), which prohibits people with certain statuses (like felons, unlawful drug users, and people under indictment) from possessing firearms. Though that statute does not include a scienter requirement directly, its penalty section—18 U.S.C. § 924(a)(2)—does. *See* § 924(a)(2) (setting the

13

penalty for "whoever *knowingly* violates" § 924(g)). Relying on the "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding *each* of the statutory elements" of a crime, the Court found that the "knowingly" applied to *all* elements of § 922(g). *Rehaif*, 139 S. Ct. at 2195 (internal quotation marks and emphasis added).

Id. at 2-3.

The defendant argues that the "basic tenets of statutory interpretation that animated the *Rehaif* decision require a similar reading of § 922(a)(6) here." Id. at 3. He contends that the scienter requirement of §922(a)(6) "must extend to each of its elements." Id. The defendant asserts that as a practical matter, this means that "§ 922(a)(6) requires not just that [he] knowingly made a false statement, but that he knowingly satisfied the other elements of the offense," which the defendant characterizes as "*knowing* [the statement] was likely to deceive the firearms dealer and *knowing* that it was material to the lawfulness of the sale." Id. at 3-4.

The defendant accuses Judge Duffin of failing to engage in "any kind of statutory interpretation," and he says Judge Duffin's conclusion that it was enough that the indictment tracked the language of §922(a)(6) reflects a "fundamental misunderstanding" of his argument and the minimum requirements of an indictment. Id. at 4. The defendant cites United States v. Carll, 105 U.S. 611 (1881), a Supreme Court decision from 1881 that he asserts "makes clear that it is *not* enough for an indictment to merely track the statutory language where the statute itself does not expressly lay out the elements of an offense." Id. The defendant says,

14

[a]lthough some statutes are sufficiently clear regarding their elements such that simply tracking the statutory language will be enough, others—particularly statutes that are so ambiguous as to require interpretative gloss from the courts to parse out their meaning—require something more.

. . . .

For those kinds of statutes, the indictment must provide the clarity the statutory text itself lacks and it must "expressly" lay out the elements of the offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974).

Id. at 4-5. The defendant references the cases Judge Duffin cited in the recommendation and argues that those cases support his position that an indictment that tracks statutory language is sufficient only if the statutory language sets out all the elements of the offense. Id. at 5 (citing United States v. Smith, 230 F.3d 300, 305 (7th Cir. 2000); United States v. White, 610 F.3d 956, 959 (7th Cir. 2010)).

The defendant insists that §922(a)(6) "simply does not fit the bill;" he argues that §922(a)(6) does not lay out its elements and requires application of the principles of statutory interpretation to "tease [them] out." Id. And he asserts that it is his constitutional right to have this court "do that teasing now, not later," arguing that if he is correct and §922(a)(6) does "require additional scienter requirements," he has a right to have them spelled out in the indictment. Id. at 5-6.

The defendant next returns to Rehaif, arguing that prior to the issuance of that decision the government "routinely would track the language of § 922(g)(1) [in the indictment] and simply allege that a defendant was a felon and knowingly possessed a firearm, but the government would *not* allege that

15

the defendant *knew* he was a felon." Id. at 6 (citations omitted). He argues that since the Rehaif decision, "the government routinely adds that language to indictments alleging violations of § 922(g)." Id. He speculates that this change reflects the government's "likely understanding that failing to explicitly lay out the additional scienter requirement from *Rehaif* would make the indictment legally deficient." Id. And, he says, courts have dismissed indictments "for simply tracking the language of the statute without making the *implicit* scienter requirement of the statute described in *Rehaif* explicit." Id.

The defendant then turns to Judge Duffin's finding that Rehaif requires only that the government prove that the defendant knew he was an unlawful user of drugs. Id. at 7. The defendant again argues that Judge Duffin misconstrued his claim; he says that he's not arguing that Rehaif "applies directly to his charges—*Rehaif* involved a separate firearm statute, § 922(g), after all." Id. The defendant says that what he is arguing is that "the same principles of statutory interpretation that underlie *Rehaif* demand a similar result when applied here." Id.

The defendant accuses Judge Duffin of trying to limit Rehaif's reach, missing the heart of the defendant's claims and failing "to offer a distinct reading of § 922 (a)(6)'s text using canons of interpretation." Id. The defendant asserts that the Fifth and Tenth Circuit decisions Judge Duffin cited in the recommendation also failed "to engage with *Rehaif's* reasoning or with the actual demands of statutory interpretation." Id. After reiterating the arguments he made to Judge Duffin about those decisions, the defendant concludes that

16

"this Court should find that § 922(a)(6) requires a scienter for each of its material elements," asserts that the government failed to allege that scienter in the indictment and urges the court to dismiss the indictment. Id. at 8.

Finally, the defendant turns to his second argument—the argument that "the charges" violate his Second Amendment Rights. Id. at 9. He notes that in his opening brief to Judge Duffin, he argued "that his statement [that he was not an unlawful user of controlled substances] would only be material if the federal statute prohibiting drug users from possessing firearms was itself constitutional" and that "[i]f the underlying prohibition is unconstitutional," then his statement, even if false, would not be material. Id. He explains that after he filed that brief, the Seventh Circuit decided Holden, and argues that Judge Duffin relied on Holden to "summarily deny" his Second Amendment claim. Id.

The defendant acknowledges that this court is bound by "Seventh Circuit precedent," but maintains that Holden was "wrongly decided" for the reasons he gave Judge Duffin. Id. Then he shifts gears, arguing that Holden does not put paid to his argument that "§ 922(a)(6) itself burdens his Second Amendment rights directly." Id. at 9-10. He asserts that if §922(a)(6) allows the government to criminally prosecute someone for making a false statement when purchasing a firearm even though the false statement is material only because of an unconstitutional statute, then §922(a)(6) "is itself a direct infringement on core Second Amendment rights." Id. at 10. In asserting that he should not be required to file a civil suit to challenge the constitutionality of

17

§922(a)(6), the defendant quoted Justice Warren's dissent in <u>Walker v. City of Birmingham</u>, 388 U.S. 207, 327 (1967), in which Justice Warren stated that some cases "have required that persons seeking to challenge the constitutionality of a statute first violate it to establish their standing to sue." <u>Id.</u> Justice Warren went to say that "it shows no disrespect for law to violate a statute on the ground that it is unconstitutional and then to submit one's case to the courts with the willingness to accept the penalty of the statute is held to be valid." <u>Id.</u> at 10-11 (quoting <u>Walker</u>, 388 U.S. at 327).

The defendant argues that §922(a)(6) significantly burdens the exercise of core Second Amendment rights and is unconstitutional, and asserts that <u>Holden</u> cannot foreclose his right to challenge the constitutionality of §922(a)(6) directly. <u>Id.</u> at 11.

B.      <u>Government's Response</u> (Dkt. No. 35)

The government asserts that the indictment states an offense under §922(a)(6). Dkt. No. 35 at 5. It quotes the language of the statute, then quotes the language of the indictment and concludes that Judge Duffin "correctly determined that the indictment language was sufficient and correct." <u>Id.</u> The government asserts that neither <u>Rehaif</u> nor the interpretive principles <u>Rehaif</u> describes require anything further than that the indictment track the language of the statute. <u>Id.</u> The government says that, to its knowledge, "every court of appeals to consider the *mens rea* required by Section 922(a)(6) in the years since *Rehaif* has confirmed that the statute requires knowledge of falsity, but not further knowledge of legal materiality." <u>Id.</u> at 5-6 (citing <u>Kaspereit</u>, 994 F.3d

18

at 1202, <u>Diaz</u>, 989 F.3d at 394). According to the government, even if <u>Rehaif</u> or its logic applied to §922(a)(6), the case would not require a defendant to know that his status as an unlawful drug user prohibited him from possessing a gun—only that he was an unlawful drug user. <u>Id.</u> at 6 (citing <u>Cook</u>, 970 F.3d at 880; <u>Maez</u>, 960 F3d at 954).

With respect to the Second Amendment arguments, the government echoes Judge Duffin in arguing that <u>Holden</u> squarely forecloses any claim. <u>Id.</u> at 7. The government argues that <u>Holden</u> "reaffirmed the well-settled principle that one cannot defend against a charge of lying by attacking the government's right to ask the question." <u>Id.</u> (citing <u>United States v. Knox</u>, 396 U.S. 77, 79 (1969). As for the defendant's concerns about the burden of filing a civil lawsuit, the government says that that is the procedure the Seventh Circuit endorsed in <u>Holden</u>. <u>Id.</u>

C.    <u>Defendant's Reply</u> (Dkt. No. 38)

The defendant accuses the government of failing to "meaningfully engage with the defense's arguments," asserting that the government "opt[s] instead to address strawmen that are perhaps easier to topple." Dkt. No. 38 at 1. As he did in his reply brief before Judge Duffin, the defendant spends three pages "clarifying" factual omissions or inaccuracies in the government's version of the events that led to his indictment. <u>Id.</u> at 2-4. But, as he did before Judge Duffin, he eventually concedes that "the details of [the defendant's sale of the firearms in question] are irrelevant here." <u>Id.</u> at 4. He asserts, as he did to Judge Duffin, that "the central question here is the lawfulness of [the defendant's] purchase

19

of those firearms back in 2021 and whether this criminal prosecution for those purchases is proper." Id.

Turning to the scienter argument, the defendant contends that the government did not "parse out the statute," "evaluate its text" or "apply canons of statutory interpretation," but relied on out-of-circuit decisions applying Rehaif in situations that did not raise the issues the defendant raises here. Id. The defendant speculates that the government is attempting to sidestep his arguments because the text and "the canon in favor of presuming scienter described in *Rehaif*" favor the defendant's position. Id. at 5.

According to the defendant, the "knowingly" scienter adverb in §924(a)(2) modifies the verb "violates" and its direct object, which the defendant asserts would be §922(a)(6). Id. (citing Rehaif, 139 S. Ct. at 2195). The defendant reasons that, because that adverb—"knowingly"—applies to a violation of §922(a)(6), the government must allege that the defendant not only knew that his statement was false, but that he knew that it was likely to deceive and knew that it was material to the sale. Id. at 6.

As to his Second Amendment argument, the defendant again acknowledges the central holding of Holden but reiterates that his argument is more nuanced: he reiterates that he is not challenging the constitutionality of §922(g) (which creates the prohibited class of individuals into which he falls), but is asserting that the requirements of §922(a)(6) are themselves a burden on his Second Amendment rights. Id. at 6-7. He asserts that the court must

20

dismiss the indictment because the government has not tried to justify that burden through historical analogues as required by Bruen. Id. at 7.

## IV. Standard for District Court Review of a Report and Recommendation

Federal Rule of Criminal Procedure 59(b) governs a district court's referral of motions to dismiss to magistrate judges. Parties have fourteen days to file "specific objections" to a magistrate judge's report and recommendation to a motion to dismiss. Fed. R. Crim. P. 59(b)(2). The district judge must review *de novo* the portions of the magistrate judge's recommendations to which a party timely objects. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

The defendant has objected to Judge Duffin's entire report and recommendation, so the court reviews that report and recommendation under the *de novo* standard of review.

## V. Analysis

### A. Scienter Requirement

#### 1. *Legal Standard*

Federal Rule of Criminal Procedure 7(c)(1) instructs that generally, "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." The Constitution requires more.

> "The Fifth Amendment guarantee of the right to indictment by a grand jury, its protection against double jeopardy, and the Sixth Amendment guarantee that a defendant be informed of the nature

21

of the charges against him establish the minimum requirements for an indictment." *United States v. Fassnacht*, 332 F.3d 440, 444 (7th Cir. 2003). An indictment satisfies these minimum requirements "if it (1) contains the elements of the offense charged; (2) sufficiently apprises the accused of what he must be prepared to meet; and (3) enables the accused to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense." *United States v. McComb*, 744 F.2d 555, 562 (7th Cir. 1984)

United States v. Scheuneman, 712 F.3d 372, 377 (7th Cir. 2013).

The defendant's argument focuses on the requirement that the indictment contain the elements of the charged offense. While an indictment that faithfully reproduces the statutory language often suffices to meet that requirement, sometimes it does not. Over 140 years ago, the Supreme Court opined in United States v. Carll that

[i]n an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; and the fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent.

Carll, 105 U.S. at 612-613 (citations omitted).

Almost one hundred years later, the Court cited Carll when discussing more fully the requirement that an indictment state the elements of the charged offense. In Hamling v. United States, the court explained that

[o]ur prior cases indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hagner v. United States*, 285 U.S.

22

427 . . . (1932); *United States v. Debrow*, 346 U.S. 374 . . . (1953). It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.' *United States v. Carll*, 105 U.S. 611, 612 . . . (1882). 'Undoubtedly the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.' *United States v. Hess*, 124 U.S. 482, 487 (1888).

Hamling, 418 U.S. 87, 117 (1974).

The Seventh Circuit has addressed, multiple times, the standard for considering the validity of an indictment. It has stated that "'[t]he test for validity [of an indictment] is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.'" United States v. Agostino, 132 F.3d 1183, 1191 (7th Cir. 1997) (quoting United States v. Allender, 62 F.3d 909, 914 (7th Cir. 1995)).

In United States v. Smith, the court repeated that

[t]o be sufficient, an indictment must fulfill three distinct functions. First, the indictment must state all of the elements of the crime charged; second, it must adequately apprise the defendant of the nature of the charges so that he may prepare a defense; and third, it must allow the defendant to plead the judgment as a bar to any future prosecutions for the same offense.

Smith, 230 F.3d at 305. The court noted that it is acceptable for an indictment to track the statutory language as long as the language set forth all the elements necessary to constitute the offense, but observed that "an indictment that tracks the statutory language can nonetheless be considered deficient if it does not provide enough factual particulars to 'sufficiently apprise the

23

defendant of what he must be prepared to meet.'" Id. (quoting Russell v. United States, 369 U.S. 749, 763 (1962)).

In United States v. White, the court explained that "[a]n indictment is reviewed on its face, regardless of the strength or weakness of the government's case." White, 610 F.3d at 958 (citing United States v. Risk, 843 F.2d 1059, 1061 (7th Cir. 1988)). It went on to hold that "[i]n judging the sufficiency of this indictment, we do not consider whether any of the charges have been established by evidence or whether the government can ultimately prove its case. *United States v. Sampson*, 371 U.S. 75, 78-79 . . . (1962); *Smith*, 230 F.3d at 305. We only look to see if an offense is sufficiently charged . . . ." Id. at 959.

Finally, in United States v. Barrios-Ramos, the Seventh Circuit reiterated that "[a]n indictment charges an offense if it accomplishes three functions: it must set out each of the elements of the crime to be charged; it must provide adequate notice of the nature of the charge so that the accused may prepare a defense; and it must allow the defendant to raise the judgment as a bar to future prosecutions for the same offense." Barrios-Ramos, 732 F. App'x 457, 459 (7th Cir. 2018) (citing Hamling, 418 U.S. at 117; United States v. Vaughn, 722 F.3d 918, 925 (7th Cir. 2013)). The defendant in Barrios-Ramos argued that although the indictment charged him with conspiracy, it did not allege that he "knowingly" conspired. Id. The Seventh Circuit rejected this argument, finding that the "verb 'conspire,' like the verbs 'induce' or 'entice' . . . entails an intent to act. Unlike transporting stolen goods, a person cannot conspire—*i.e.*,

24

agree—without intending to do so. It is difficult to imagine how someone could involuntarily or accidentally come to an agreement." Id. at 460.

The principles one may take from these cases are:

--The indictment must conform to minimal constitutional standards;

--An indictment that tracks the language of the statute may conform to the minimal constitutional standard of stating the elements of the charged offense if the statutory language clearly sets out the elements of the statutory offense;

--Whether the charges have been established by evidence or can be proved is not relevant to the validity of the indictment; and

--The indictment need not include a scienter adverb when the statute contains verbs that entail intent (such as "conspire").

2. *The Indictment Tracks the Language of the Statute*

Section 922(a)(6) makes it unlawful

for any person *in connection with the acquisition* or attempted acquisition *of any firearm* or ammunition *from a* licensed importer, licensed manufacturer, *licensed dealer*, or licensed collector, *knowingly to make any false or fictitious* oral or *written statement* or to furnish or exhibit any false, fictitious, or misrepresented identification, *intended or likely to deceive such* importer, manufacturer, *dealer*, or collector *with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter*;

18 U.S.C. §922(a)(6).

The indictment charges that:

1.    On or about the following dates, in the State and Eastern District of Wisconsin,

25

*in connection with the acquisition of firearms from federal licensees, knowingly made a false and fictitious written statement intended and likely to deceive the licensees as to a fact material to the lawfulness of the sale and disposition of the firearms under the provisions of Chapter 44 of Title 18, United States Code.*

2.      Specifically, in connection with the purchase and attempted purchase of the firearms below, Shelton W. Larkin, Jr. falsely stated on the Firearms Transaction Record (ATF Form 4473) that he was not an unlawful user of a controlled substance, when in fact, he was an unlawful user of a controlled substance.

Dkt. No. 1 at 1. The italicized portions of the statute and the indictment demonstrate that the language of the indictment tracks the language of §922(a)(6).

3.      *The Language of the Statute Contains Its Elements, Including Its Scienter Requirements*

The defendant asks this court to identify the elements of §922(a)(6). He believes that §922(a)(6) has three elements: (1) making a false statement to a federal licensee in connection with the acquisition of a firearm, (2) intended or likely to deceive the federal licensee and (3) respecting a fact material to the lawfulness of the sale. The court disagrees.

First, that is not how the Seventh Circuit's Pattern Jury Instructions define the elements of §922(a)(6). The pattern instruction for §922(a)(6) *does* contain three elements, but those elements are different from the elements described by the defendant:

1. The defendant [made a false statement; furnished or exhibited false or misrepresented identification] in connection with the [acquisition; attempted acquisition] of [a firearm; ammunition] from a licensed firearms [dealer; importer; manufacturer; collector]; and

26

2. The defendant did so knowingly; and

3. The [statement; identification] was intended to or likely to deceive the [dealer; importer; manufacturer; collector] with respect to any fact material to the lawfulness of the sale or other disposition of the [firearm; ammunition].

William J. Bauer SEVENTH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS (2022), p. 358 (available at https://www.ca7.uscourts.gov/pattern-jury-instructions/pattern-jury.htm).

The pattern instruction acknowledges the obvious: that the adverb "knowingly" in the second element modifies the verb "make" in the first element—to violate the statute, a defendant must "knowingly" make a false or fictitious oral or written statement.

The structure of the instruction also acknowledges that §922(a)(6) contains a second scienter requirement. The statute requires that the false or fictitious statement be "intended or likely to deceive the dealer with respect to any fact material to the lawfulness of the sale." Like the word "conspire" in Barrios-Ramos, "intended" is a word of scienter—to make statement that is "intended," or "likely," to deceive someone, the maker of the statement must be *trying* to deceive the listener about a fact that is material to the sale. As the Seventh Circuit stated in United States v. Bowling, the statute

> requires the government to prove either that the defendant made the statement with the intent to deceive the firearms dealer, or that the statement was of such a nature that it was likely to deceive the dealer. *See* [*United States v.*] *Dillon*, 150 F.3d [754] at 759 [(7th Cir. 1998)]. Both the knowledge and specific intent elements require evidence relating to the state of mind of the defendant; more significantly, both may be negated by evidence that the defendant labored under an honest misunderstanding of the facts.

27

Bowling, 770 F.3d 1168, 1174 (7th Cir. 2014).

Both the language of the statute and the language of the indictment require that the defendant (a) *knowingly* make a false or fictitious statement to a federally licensed firearms dealer in connection with the acquisition of a firearm, and (b) *intend* that statement, or *believe that statement likely*, to deceive the licensee with respect to a fact material to the lawfulness of the sale.

The defendant insists that the "material to the lawfulness of the sale" language constitutes a separate element that needs a scienter word. But, as the pattern instruction's structure and the structure of the statute itself demonstrate, the third element of the offense already contains scienter words for "material"—"intended or likely to." The defendant must make a false statement, he must make it knowing that it is false, and it must be "intended or likely" to deceive the federal licensee "with respect to any fact material to the lawfulness of the sale."

The elements of §922(a)(6) are (a) knowingly making a false statement to a federal licensee in connection with the acquisition of a firearm (b) intended or likely to deceive the licensee about a fact material to the sale. The Seventh Circuit broke the first element out into two; either way, the requirement that the statement be intended to deceive the licensee as to a fact material to the sale is its own element. The statute, and the indictment, articulate those elements.

4. _Rehaif_

Despite the above, the defendant relies heavily on the Supreme Court's decision in <u>Rehaif</u> to support his assertion that §922(a)(6) does _not_ lay out all its elements, and that the court must rely on canons of construction to "tease out" the elements that do not appear in the statutory language. Given how heavily the defendant relies on <u>Rehaif</u>, a brief review of the facts and reasoning of the case is helpful.

The petitioner in <u>Rehaif</u> came to the United States from another country on a student visa but was dismissed by the university and told that his "immigration status" would be terminated unless he went to another school or left the country. <u>Rehaif</u>, 139 S. Ct. at 2194. Rehaif neither went to another university nor left the country, but he did visit a firing range and fired two guns. <u>Id.</u> The government charged him with possessing firearms while being a non-citizen unlawfully in the United States, in violation of §§922(g)(5) and 924(a)(2). <u>Id.</u> The trial judge instructed the jury (over Rehaif's objection) that the government was not required to prove that Rehaif knew that he was illegally or unlawfully in the United States. The jury convicted him, and the judge sentenced Rehaif to eighteen months in custody. <u>Id.</u>

On appeal, Rehaif argued that the "trial judge erred in instructing the jury that it did not need to find that he knew he was in the country unlawfully." <u>Id.</u> at 2195. The Eleventh Circuit disagreed, found that the jury instruction was correct and affirmed the conviction. <u>Id.</u> The Supreme Court stated, "[t]he Court of Appeals believed that the criminal law generally does not

29

require a defendant to know his own status, and further observed that no court of appeals had required the Government to establish a defendant's knowledge of his status in the analogous context of felon-in-possession prosecutions." Id. The Supreme Court granted *certiorari* to consider whether, in prosecutions under § 922(g) and § 924(a)(2), the Government must prove that a defendant knows of his status as a person barred from possessing a firearm." Id.

Against this factual background, it also is helpful to look at the statutes Rehaif was charged with violating, especially given the defendant's repeated assertion that Judge Duffin, the government and this court should parse the language of the statutes *he* has been charged with violating in the same way the Rehaif court parsed the statutes that Rehaif allegedly violated. The statute that prohibits a person from possessing firearms if he is a non-citizen unlawfully in the United States is 18 U.S.C. §922(g)(5)(A). Section 922(g)(5)(A) says that it "shall be unlawful for any person who, being an alien, is illegally or unlawfully in the United States," to possess or receive a firearm. As the defendant accurately points out, §922(g)(5)(A) contains *no* scienter adverb—no "knowingly" or "willfully" or "intentionally." The scienter requirement for §922(g)(5)(A) comes from the *penalty* provision, §924(d)(8), which provides that anyone who "knowingly" violates §922(g) shall be fined, imprisoned not more than fifteen years or both. When Rehaif was decided, that penalty provision

30

was housed in §924(a)(2), and the maximum penalty was ten years, but the "knowingly" requirement was the same.[3]

Given the absence of any scienter requirement in §922(g)(5)(A), the Supreme Court looked to the scienter requirement in the penalty provision—at that time, §924(a)(2). The Court began by noting that §924(a)(2) provided that whoever "knowingly" violated §922(g) would be subject to certain penalties, and that §922(g) provided that it was "'unlawful for any person . . . , being an alien . . . illegally or unlawfully in the United States,' to 'possess in or affecting commerce, any firearm or ammunition.'" Rehaif, 139 S. Ct. at 2195 (quoting §922(g)(5)(A)). The Court observed that the word "knowingly" in §924(a)(2) modified the verb "violates" and the direct object of the verb "violates"—§922(g). Id. And there the Court identified the issue in question: "The proper interpretation of the statute thus turns on what it means for a defendant to know that he has 'violate[d]' § 922(g)." Id.

The Court then turned to the elements of a violation of §922(g)(5)(A): "(1) a status element (in this case, 'being an alien . . . illegally or unlawfully in the United States'); (2) a possession element (to 'possess'); (3) a jurisdictional element ('in or affecting commerce'); and (4) a firearm element (a 'firearm or ammunition')." Id. at 2195-96. The question was whether the "knowingly" requirement of §924(a)(2) applied to each of those four elements. As to the third

_____

[3] Congress increased the maximum penalty for a violation §922(g) and moved the statutory maximum provision to §924(d)(8) in Pub. L. 117-159, Div. A, Title II, § 12004(c) to (f), June 25, 2022, 136 Stat. 1329.

element—the jurisdictional element—the Court explained that the "knowingly" requirement did not apply; "[b]ecause jurisdictional elements normally have nothing to do with the wrongfulness of the defendant's conduct, such elements are not subject to the presumption in favor of scienter." Id. (citing Luna Torres v. Lynch, 578 U.S. 452, 466-49 (2016)).

That left three elements—the "status" element, the "possession" element and the "firearm" element. The Court explained that the question of whether the government was required to prove that the defendant acted knowingly "is a question of congressional intent." Rehaif, 139 S. Ct. at 2195 (citing Staples v. United States, 511 U.S. 600, 605 (1994)). To determine Congress' intent, the Court explained that it started "from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" Id. (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994)). The court referred to this presumption as an "interpretive maxim," naming it a "presumption in favor of 'scienter,'" and explaining that it was a "presumption that criminal statutes require the degree of knowledge sufficient to 'mak[e] a person legally responsible for the consequences of his or her act or omission.'" Id. (quoting Black's Law Dictionary 1547 (10th ed. 2014)).

The Court explained that it applies that "presumption of scienter" even where Congress had not specified the scienter in the statutory text, but that the presumption applies even more strongly "when Congress includes a general

32

scienter provision in the statute itself." Id. The Court referenced ALI, Model Penal Code §2.02(4), p. 22 (1985), and quoted from that source: "(when a statute 'prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears')." Id.

Addressing the three remaining elements of a violation of §922(g)(5)(A)—the "status," "possession" and "firearm" elements—the Rehaif Court stated that "[a]s 'a matter of ordinary English grammar,' we normally read the statutory term "'knowingly'" as applying to all the subsequently listed elements of the crime." Id. (quoting Flores-Figueroa v. United States, 556 U.S. 646, 650 (2009)). The Court also referenced its decision in Luna Torres, in which it stated that "we 'ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word "knowingly" as applying that word to each element'". Id. (quoting Luna Torres, 578 U.S. at 652). The Court observed that Rehaif's was "notably not a case where the modifier 'knowingly' introduces a long statutory phrase, such that questions may reasonably arise about how far into the statute the modifier extends." Id. And the parties in Rehaif apparently agreed that the "knowingly" requirement of §924(a)(2) applied "to § 922(g)'s possession element, which is situated after the status element." Id. The court saw "no reason to interpret 'knowingly' as applying to the second § 922(g) element but not the first." Id. (citing United States v. Games-Perez, 667 F.3d. 1136, 1143 (10th Cir. 2012) (Gorsuch, J., concurring)). The Court

33

thought that the opposite was true—that "by specifying that a defendant may be convicted only if he 'knowingly violates' § 922(g), Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)." Id.

The Rehaif Court also opined that applying the §924(a)(2) "knowingly" requirement to the status element of §922(g)(5)(A) would help "to separate wrongful from innocent acts." Id. at 2197.

> Assuming compliance with ordinary licensing requirements, the possession of a gun can be entirely innocent. See *Staples*, 511 U.S. at 611 . . . . It is therefore the defendant's *status*, and not his conduct alone, that makes the difference. Without knowledge of that status, the defendant may well lack the intent needed to make his behavior wrongful. His behavior may instead be an innocent mistake to which criminal sanctions normally do not attach.

Id. The Court rejected the government's argument that Congress would have expected defendants charged with violating §922(g) to know their own status.

Id.

> If the provisions before us were construed to require no knowledge of status, they might well apply to an alien who was brought into the United States unlawfully as a small child and was therefore unaware of his unlawful status. Or these provisions might apply to a person who was convicted of a prior crime but sentenced to only probation, who does not know that the crime is "*punishable* by imprisonment for a term exceeding one year." § 922(g)(1) (emphasis added); see also *Games-Perez*, 667 F.3d at 1138 (defendant held strictly liable regarding his status as a felon even though the trial judge had told him repeatedly—but incorrectly—that he would "leave this courtroom not convicted of a felony"). As we have said, we normally presume that Congress did not intend to impose criminal liability on persons who, due to lack of knowledge, did not have a wrongful mental state. And we doubt that the obligation to prove a defendant's knowledge of his status will be as burdensome as the Government suggests.

Id. at 2197-98.

34

The Court concluded that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Id. at 2200.

Since the June 21, 2019 decision in Rehaif, the Seventh Circuit has clarified the scope of the knowledge that Rehaif requires in §922(g) prosecutions. In Maez, 960 F.3d 949, the defendants (who had been charged with possessing firearms after having been convicted of felonies in violation of §922(g)(1)) argued that under Rehaif, §922(g)(1) "prohibits only criminally *willful* possession of firearms and ammunition—possession with knowledge that the law makes the possession a crime." Id. at 954. The Seventh Circuit disagreed, analyzing the language of Rehaif and concluding that it required only that the defendant know his status (a person convicted of a felony), not that he know the criminal prohibition against people with his status possessing firearms. Id. at 954-56. The court reiterated that conclusion weeks later in United States v. Triggs, 963 F.3d 710, 715 (7th Cir. 2020) ("to convict Triggs at trial, the government had to prove that he knew he had been convicted of a 'misdemeanor crime of domestic violence' as that phrase is defined for the purposes of § 922(g)(9) (thought *not* that he knew he was barred from possessing firearms)"). It reiterated that holding again in a case involving a violation of §922(g)(3)—the section of §922(g) that prohibits unlawful users of controlled substances from possessing firearms—in holding that the

35

government was required to prove that the defendant knew that he was an unlawful user of a controlled substance. Cook, 970 F.3d at 880.

The defendant's reliance on Rehaif is misplaced. The Rehaif Court expressly confined its ruling to prosecutions under §922(g) and §924(a)(2). The defendant dismisses this fact, asserting that he knows he has not been prosecuted for violating §922(g) and instead arguing that the court should apply the *reasoning process* the Supreme Court used in analyzing §922(g) to §922(a)(6). This argument ignores the fact that the Rehaif Court used the reasoning process it did because of the structure of §922(g)—a structure substantively different from the structure of §922(a)(6).

As this court has explained, the statute Rehaif was charged with violating, §922(g)(5)(A), did not include a scienter requirement. In fact, §922(g) as a whole has no scienter requirement. Section 922(g) criminalizes possession or receipt of firearms by nine categories, or "statuses," of persons:

- Persons convicted in any court of a crime punishable by imprisonment for a term exceeding a year (§922(g)(1));
- Persons who are fugitives from justice (§922(g)(2));
- Persons who are unlawful users of or addicted to any controlled substance as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)(§922(g)(3));
- Persons who have been adjudicated as "a mental defective" or who have been committed to a mental institution (§922(g)(4));
- Aliens unlawfully in the United States or admitted under a nonimmigrant visa (§922(g)(5));
- Persons who have been discharged from the Armed Forces under dishonorable conditions (§922(g)(6));
- Persons who, having been citizens of the United States, have renounced their citizenship (§922(g)(7));
- Persons subject to a domestic violence restraining order (§922(g)(8)); and
- Persons who have been convicted in any court of a misdemeanor crimes of domestic violence (§922(g)(9)).

36

Yet there is no scienter requirement in the statute or in any of the subsections of the statute.

The scienter requirement for §922(g)(5)(A)—for *all* of §922(g) and its nine status categories—comes from the penalty statute, §924. When the Supreme Court decided Rehaif in 2019, §924(a)(2) said that anyone who "knowingly violate[d]" §922(g) was subject to a maximum sentence of ten years. Because there is no scienter requirement in §922(g) or any of its subsections, the Court applied the "knowingly" requirement of §924(a)(2) to each of the three, non-jurisdictional elements of the subsection of §922(g) that prohibits possession of a firearm by a person who holds the status of being an alien illegally in the United States—§922(g)(5)(A).

The defendant points out that since Rehaif, the government has begun crafting indictments that apply the "knowingly" scienter requirement of §924 to violations of another subsection of §922(g)—§922(g)(1), which prohibits possession of a firearm by a person who holds the status of having been convicted of a crime punishable by a term of imprisonment exceeding one year. That makes sense, because §922(g)(1)—like the statute at issue in Rehaif—is a subsection of §922(g), a statute that does not have its own scienter requirement. The issue is not before this court, but one might anticipate that in a prosecution involving any of §922(g)'s nine "status" subsections, the government would craft its indictments to include §924(d)(8)'s "knowingly" requirement regarding non-jurisdictional elements of the offense.

37

But §922(a)(6) is different from §922(g) in that it contains a scienter requirement; as the court discussed in §V(A)(3) above, it has not one but two scienter requirements. It prohibits a defendant from "knowingly" making a false or fictitious statement to a licensed dealer in connection with the acquisition of a firearm when that statement is "intended" or "likely" to deceive the dealer as to any fact material to the lawfulness of the sale. Like §922(g), §922(a)(6) has a corresponding penalty provision—§924(a)(2), which still says that anyone who "knowingly" violates §922(a)(6) is subject to a ten-year maximum penalty. But one need not rely on the general scienter requirement of §924(a)(2) to determine the scienter required for a violation of §922(a)(6), because §922(a)(6) contains its own scienter requirements. If one tries to apply the Rehaif Court's method and derive the scienter requirement for §922(a)(6) from the general scienter requirement in §924(a)(2), the result makes no sense.

Section 922(a)(6) prohibits making a false or fictitious oral or written statement to a licensed dealer in connection with the acquisition of a firearm. But unlike §922(g), §922(a)(6) contains a scienter requirement—it requires that the defendant make the false or fictitious statement to the licensed dealer "knowingly." To apply the general "knowingly" requirement of §924(a)(2) to §922(a)(6)'s prohibition against making a false or fictitious statement would result in a requirement that the defendant "knowingly" make the false or fictitious statement "knowingly." One of those "knowingly's"—either the "knowingly" in §922(a)(6) or the "knowingly" in §924(a)(2)—would be rendered

unnecessary and redundant. The same is true for the "intended or likely to" requirement in §922(a)(6).

The defendant urges the court to apply one principle of statutory interpretation used by the Rehaif Court—the presumption in favor of scienter. But the court need not make a *presumption* in favor of scienter where Congress included scienter requirements in the statute itself, which it did in §922(a)(6). It included the word "knowingly" before the prohibited conduct—making a false or fictitious statement intended or likely to deceive a licensed firearms dealer with respect to any fact material to the lawfulness of the sale. And it included the words "intended or likely to" before the kind of deception prohibited.

While urging this court to focus on the presumption in favor of scienter, the defendant ignores other canons of statutory interpretation. For example, the defendant makes no mention of the canon against surplusage, which says that every clause and word of a statute should be given effect, if possible. See Chickasaw Nation v. United States, 534 U.S. 84, 93 (2001) (quoting United States v. Menasche, 348 U.S. 528, 538-39 (1995)). If the court were to look outside of §922(a)(6) for a general scienter requirement, it would render the statute's own "knowingly" requirement surplusage. The same is true for the statute's requirement that the false or fictitious statement must be "intended or likely to deceive" the licensed dealer regarding a fact material to the sale. Importing a scienter requirement from outside §922(a)(6) would render the "intended or likely to deceive" language surplusage.

The defendant's argument ignores another general principle of statutory construction: "'[I]t is a general principle of statutory construction that when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."'" John K. Maciver Inst. for Pub. Policy, Inc. v. Schmitz, 885 F.3d 1004, 1011 (7th Cir. 2018) (quoting Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452 (2002)). Congress did not include a scienter requirement in §922(g), apparently electing to rely on the general scienter requirement in the penalty section. But it *did* include scienter requirements in §922(a)(6). Presumably Congress acted intentionally; it could have left the words "knowingly" and "intended or likely to" out of §922(a)(6) and relied on the general jurisdiction provision of §924(a)(2). It did not.

The defendant has criticized both the government and Judge Duffin for failing to engage in a close reading of the text of §922(a)(6) and failing to apply principles of statutory interpretation to divine its meaning. The defendant insists that had the government and Judge Duffin done what he asked, they would have concluded that the indictment was required to allege that the defendant knowingly made a false or fictitious oral or written statement, knew the statement was likely to deceive the federally licensed firearms dealer and knew that that the false statement was material to the lawfulness of the sale. Perhaps the reason the government and Judge Duffin did not do as the defendant suggested is because the indictment *does* allege what the defendant

40

argues the close parsing and application of interpretational canons require it to. It alleges that the defendant knowingly made false statements intended to or likely to deceive licensed firearms dealers about a matter material to the sales when attempting to acquire firearms. This court has attempted to "engage with" the defendant's arguments and to conduct the analysis the defendant has argued would reveal the invalidity of the indictment. The court's conclusion is that application of the principles and method used in Rehaif to the statute in this case is unnecessary, results in surplusage and ignores Congress' presumably deliberate use of a different scienter structure in §922(a)(6) than it used for §922(g).

5.    *Other Arguments*

The defendant argues that the Tenth and Fifth Circuit cases upon which Judge Duffin relied did not engage with the reasoning in Rehaif. Whether or not that is entirely correct (and the court does not necessarily agree that it is), this court will not apply the reasoning in Rehaif to §922(a)(6)—a statute that has its own scienter requirements.

The defendant's disputes about the government's version of the offense are irrelevant; he admits as much, but not for the reason the court believes them to be irrelevant. Whether what the defendant told the agents during their September 2022 interview of him is sufficient to prove that the defendant lied on the ATF forms about being a user of controlled substances is irrelevant to the question of whether the *indictment* is valid. As the court has noted, the Seventh Circuit instructs that "[i]n judging the sufficiency of this indictment,

41

we do not consider whether any of the charges have been established by evidence or whether the government can ultimately prove its case." White, 610 F.3d at 959 (citations omitted).

    6.    *Conclusion*

Judge Duffin's analysis may not have been lengthy, but his conclusion was correct. The defendant's argument that the indictment is invalid because it does not lay out all the elements of §922(a)(6)—particularly the scienter element—is without merit. The court will adopt Judge Duffin's recommendation that the court deny the motion to dismiss the indictment on this basis.

    B.    Second Amendment

Judge Duffin also correctly concluded that the Seventh Circuit's decision in Holden forecloses the defendant's Second Amendment arguments. When the defendant in Holden tried to buy a firearm, he was required—as was the defendant in this case—to complete an ATF Form 4473. Holden, 70 F.4th at 1016. When asked whether he was under indictment or information for a crime punishable by imprisonment for a year or more, "he answered 'no,' but that answer was false." Id. After pleading guilty, Holden sought to withdraw his plea so that he could argue that §922(n)—"It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year" to receive a firearm shipped in interstate commerce—violated the Second Amendment under the Supreme Court's decision in Bruen. Id. The district court granted the motion, dismissed the indictment and ruled that §922(n) was invalid. Id.

The Seventh Circuit reversed. It characterized the "main problem" with the district court's decision to be that "Holden was not charged with violating § 922(n). He was charged with making a false statement to a firearms dealer, in violation of § 922(a)(6)." Id. at 1017. The court explained that §922(a)(6) prohibits making a false statement intended to deceive the firearms dealer about any fact material to the sale, and that "[a] false statement is material if it has 'a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed.'" Id. (quoting United States v. Gaudin, 515 U.S. 506, 509 (1995)). The court observed that "[a]n honest statement about a pending indictment would be material under that standard," because "[a] truthful statement would have led the dealer to refuse to sell Holden a gun." Id.

Holden did not argue that his lie did not affect the dealer's willingness to sell him a gun. Rather, he asserted that the lie was not material to the lawfulness of the sale, because—in his view—the statute that created the status about which he lied was unconstitutional. Id. The Seventh Circuit pointed out that no court had declared §922(n) void. Id. More to the point, the court explained that Congress has the power to require gun purchasers to provide information. It recounted that "[m]any decisions of the Supreme Court hold that false statements may be punished even when the government is not entitled to demand answers—when, for example, compelling a truthful statement would incriminate the speaker." Id. (collecting cases). The court stated that "[t]he word 'material' in § 922(a)(6) does not create a privilege to lie,

43

when the answer is material to a statute, whether or not that statute has an independent constitutional problem." Id. The court quoted the Supreme Court's words in Bryson v. United States, 396 U.S. 64, 72 (1969), which put it another way:

> "Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood." *Bryson v. United States*, 396 U.S. 64, 72 . . . (1969), reaffirmed in *Lachance v. Erickson*, 522 U.S. 262 . . . (1998). That principle decides this appeal.

Id. at 1016.

The defendant's original argument in his opening brief to Judge Duffin was identical to Holden's argument. The defendant argued to Judge Duffin that §922(g)(3), which prohibits a person who is an unlawful user of or is addicted to a controlled substance defined in the Controlled Substances Act from possessing a firearm, violates the Second Amendment as interpreted in Bruen and thus that his lies on the ATF forms denying that he was such a user were not material to the lawfulness of the sales. Before this court, the defendant implicitly concedes that Holden forecloses that argument. He explicitly concedes that Judge Duffin and this court are bound by the decision in Holden but argues that Holden was "wrongly decided." Defense counsel well knows that neither Judge Duffin nor this court have the authority to overturn a decision by the Seventh Circuit Court of Appeals; the court assumes that the defendant criticizes Holden only to preserve his arguments for appeal.

44

The defendant goes further, however, and argues that §922(a)(6) itself violates the Second Amendment because Congress could legislate unconstitutional prohibitions on gun possession and potential purchasers then would be faced with a Hobson's choice: tell the truth on the ATF Form 4473 and be denied the constitutional right to possess a gun based on an unconstitutional prohibition, or lie on the ATF Form 4473 and face prosecution and possible conviction under §922(a)(6). The defendant asserts that this possibility makes §922(a)(6)'s prohibition against lying about a matter material to the sale of a gun an unconstitutional burden on a person's Second Amendment right to possess a gun.

This argument is purely speculative at this point. As the Seventh Circuit noted in Holden, "except with respect to a law invalid in every possible application . . ., a statute's constitutionality must be assessed as applied." Holden, 70 F.4th at 1017 (citing United States v. Stevens, 559 U.S. 460, 472-73 (2010); United States v. Salerno, 481 U.S. 739, 745 (1987)). As the defendant appears to concede, neither the Seventh Circuit nor the Supreme Court has held that §922(g)(3) violates the Second Amendment (under the Supreme Court's Bruen analysis[4] or otherwise), so as applied to the defendant,

_____

[4] The defendant has attempted to graft the Bruen analysis onto §922(a)(6). Section 922(a)(6) prohibits an individual from lying about facts "material to the lawfulness of the sale or other disposition of [a] firearm or ammunition under the provisions of [the firearms] chapter" of the United States Criminal Code. Section 924(a)(1)(A) prohibits knowingly making false statements with respect to information required by the firearms chapter of the United States Criminal Code to be kept in the records of a licensed firearms dealer. The first question the court asks under the Bruen analysis is whether the plain text of the Second

45

§922(a)(6) does not violate the defendant's Second Amendment or other

constitutional rights.

Further, the Seventh Circuit addressed this argument in <u>Holden</u>. In

noting that Holden did not contend that there was any constitutional problem

with §922(a)(6), the court engaged in the following thought exercise:

> Congress is entitled to require would-be purchasers to provide information—their names, addresses, Social Security numbers, criminal histories, and so on. We may assume that the Second Amendment would prevent enforcement of a statute saying, for example, that "anyone whose surname starts with the letter H is forbidden to possess a firearm." But that would not prevent Congress from demanding purchasers' real names. So too with Social Security numbers: the Constitution may block the federal government from limiting gun ownership to people who have Social Security numbers, but it would not interfere with the use of such numbers to identify, and perhaps check the criminal history of, people who do have them. The power to collect accurate information is of a different character—and stands on a firmer footing—than the power to prohibit particular people from owning guns.

---

Amendment covers the conduct at issue in these statutes. <u>Bruen</u>, 142 S. Ct. at 2126. District courts considering that question have concluded that §§922(a)(6) and 924(a)(1)(A) do not regulate activity covered by the plain text of the Second Amendment. <u>United States v. Ladd</u>, Cause No. 22-CR-057, 2023 WL 4105414, (N.D. Ind. June 21, 2023) ("The statutes at issue do not criminalize Ladd's firearm possession in any way; they criminalize making false statements. To the extent there is a connection between the conduct prohibited by these laws and Ladd's right to keep and bear arms, it is highly tenuous."); <u>United States v. Scheidt</u>, Cause No. 22-CR-49, 2023 WL 2865349, *1 (N.D. Ind. April 10, 2023) ("Defendant's right to bear arms is not addressed, much less infringed, by § 922(a)(6), so the statute cannot be unconstitutional under <u>Bruen</u>."); <u>United States v. Valentine</u>, Case No. 20-CR-117, 2023 WL 2571720, *7 (N.D. Ind. Mar. 20, 2023) ("The Court finds that § 922(a)(6) does not regulate any activity protected by the Second Amendment. As such, it is a constitutionally permissible regulation under <u>Bruen</u>.").

Id. Again, Congress's use of the word "material" does not "create a privilege to lie" if the answer to a question is "material" to a statute, even if the statute "has an independent constitutional problem." Id.

As for the defendant's argument that filing a civil lawsuit to challenge the constitutionality of a statute is somehow a burden on his rights, the defendant has provided no authority for his implied argument that a defendant in a criminal proceeding has a right to launch a constitutional attack on the statute he is alleged to have violated as part of the criminal prosecution. As the Seventh Circuit noted in Holden, a person seeking to have a criminal statute deemed constitutionally infirm "should file a declaratory-judgment action rather than tell a lie in an effort to evade detection that the sale would violate the statute." Id. Such a person must challenge the statute's constitutionality in a civil lawsuit. This criminal lawsuit is not the appropriate procedural mechanism by which to make that challenge.

## VI. Conclusion

The court **OVERRULES** the defendant's objections. Dkt. No. 31.

The court **ADOPTS** Judge Duffin's recommendation. Dkt. No. 22.

The court **DENIES** the defendant's motion to dismiss the indictment. Dkt. No. 15.

The court **ORDERS** that by the end of the day on **November 10, 2023**, the parties must file a joint report, updating the court as to the status of the case and the parties' proposed next steps. The court will exclude the time

between the filing of the defendant's motion and the filing of the status report from the Speedy Trial calculation.

Dated in Milwaukee, Wisconsin this 26th day of October, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

Case 2:23-cr-00033-PP   Filed 10/26/23   Page 48 of 48   Document 39