# FEDERAL DEFENDER SERVICES OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Guy Cardamone, Madison Supervisor
Elizabeth Blair
John W. Campion
Alexandra Douglas
Ramuel R. Figueroa
Matthew Giesfeldt
Jonathan Greenberg
Gabriela A. Leija
Julie K. Linnen
Dennise Moreno
Tom Phillip
Joshua D. Uller
Alex Vlisides

411 East Wisconsin Avenue
Suite 2310
Milwaukee, Wisconsin 53202

Telephone 414-221-9900
Facsimile 414-221-9901

September 10, 2024

Chief Judge Pamela Pepper
United States District Court
517 E. Wisconsin Avenue
Milwaukee, WI 53202

Re:     *United States v. Shelton Larkin*
        Case No. 23-cr-033

Dear Judge Pepper,

This case marks Shelton Larkin's first ever criminal conviction, and he is determined to make it his last. Over the past year and a half, Shelton has certainly put that determination into action: he has found stable employment as a machinist at ThermTech – a job he has held for 2 years now; once a daily user of marijuana, Shelton has impressively cut the habit altogether and has tested negative for all controlled substances 11 times; and Shelton has also avoided any and all law enforcement contact since beginning pretrial supervision in March 2023. By nearly every metric, Shelton is a young man on a positive path.

In recognition of Shelton's efforts and progress, the parties have agreed to jointly recommend a sentence of probation. Mr. Larkin respectfully submits this letter in support of that joint request.

Milwaukee · Madison · Green Bay

September 10, 2024
Page 2

## Background

### *Mr. Larkin's personal history*

Shelton Larkin first experienced the effects of the criminal system at a young age. Before Shelton even turned one, his father was arrested for drug trafficking in Missouri. For that offense, Shelton Larkin Sr. was sentenced to 12 years in prison. *See* Missouri Courts, Case No. 22991-01638-01, *State of Missouri v. Shelton Wonsel Larkin*.[1] Shelton's mother, Markesha Harley, was determined that her son would not follow in his father's footsteps. So she separated from Shelton's father, hoping to find a more stable environment for her infant son.



Thankfully for Shelton, Ms. Harley succeeded. As a certified nursing assistant, Ms. Harley worked hard to provide for her young family. But she would soon find additional support in her relationship with Jimmy Crawford. Mr. Crawford quickly stepped into a fatherly role with Shelton, and he eventually went on to have three biological children with Ms. Harley. More than 20 years later, the couple remains together.

Shelton's mother and stepfather provided a great deal of stability to Shelton and his siblings. Though they didn't always live in the best neighborhoods growing up, Shelton always had a safe and supportive home environment and credits his parents for raising him well.

*Mr. Larkin and his mother.*

As the oldest sibling, Shelton always felt a strong sense of duty towards his family. At just 16 or 17 years old, Shelton started working at McDonald's while still attending high school. In her letter to the Court, Shelton's mother describes how even as a teenager, Shelton would use his earnings to help pay household bills when the family was short on cash. *See* Ex. A, Letter of Support.

---

[1] Available at: https://www.courts.mo.gov/cnet/cases/newHeader.do?inputVO.caseNumber=22991-01638-01&inputVO.courtId=CT22#charges.

September 10, 2024
Page 3

After graduating high school, Shelton found a full-time job as a correctional officer at the Milwaukee County Community Reintegration Center in 2020. He worked there for about five months before he was unfortunately let go. Wanting to set himself up to find a more stable job than the fast-food gigs he'd worked as a teenager, Shelton decided to enroll at MATC in 2021. While there, he took classes on auto-body repair and learned to paint cars. He took out loans to pay for tuition, and also paid a portion of that tuition out of pocket. In May 2021, Shelton started working as an overnight stocker at Walmart, though that job lasted only about 8 months, or until early 2022.



That same year, Shelton suffered a significant loss when his grandmother suddenly passed away. Following her death, Shelton began drinking more to cope with his grief. It was only months later that he realized he had a problem. He curbed his alcohol use, and by September 2022, Shelton had started a promising new job at ThermTech – the same company where his stepfather, Mr. Crawford, had built his own career. Shelton has remained at that job ever since.

*Mr. Larkin and his family.*

### The offense

Mr. Larkin has pleaded guilty to making a false statement in connection with the purchase of a firearm. As the Presentence Report describes, throughout 2021, Mr. Larkin purchased several firearms. Although he was not a felon at the time and he had a valid CCW permit, Mr. Larkin did regularly smoke marijuana. Mr. Larkin did not disclose that marijuana use on the ATF Form he filled out when purchasing his firearms, marking "no" to the question of whether he was an unlawful user of controlled substances.

When Mr. Larkin was between jobs in 2022, he struggled financially. He was living with his mother, and ever since he could remember, he had always helped out with the family's bills. Now, he could no longer afford to. Mr. Larkin decided to sell the most valuable thing he owned: his firearms. Such sales of firearms between private citizens on the secondary market, of course, are not illegal. *See Abramski v. United States*, 573 U.S. 169, 185 (2014) ("Congress decided to regular dealers' sales, while leaving the secondary market for guns largely untouched.").

However, Mr. Larkin recognizes that he did not know much about the people who purchased his guns. One of those individuals – J.M. – was arrested in September 2022 with a gun he purchased from Mr. Larkin. *See* Wisconsin Circuit Court Access, Milwaukee County Case No. 22CF002146. JM was charged with unlawfully possessing a firearm after having been adjudicated delinquent of a felony as a juvenile. *Id.* Notably, because JM's prior offense did not result in an *adult* criminal conviction, it would not have appeared in a public online search of the Wisconsin Circuit Court records. The parties agree that Mr. Larkin did not know of JM's prohibited status at the time he sold him the gun. *See* PSR ¶ 18.

After JM's arrest, federal agents went to speak to Mr. Larkin at his mother's home, where he still resided at the time. When questioned, Mr. Larkin told the agents that he had sold his firearms because he needed money to pay his bills. Mr. Larkin also admitted he was a marijuana user and that he had been for about three years.

Five months later, in February 2023, Mr. Larkin was federally indicted for falsely stating he was not an unlawful user of a controlled substance (despite being a marijuana user) when he purchased firearms in 2021. He was arraigned in March 2023 and has been on pretrial supervision ever since.

### Mr. Larkin's exemplary performance while on pretrial supervision

For the past year and a half, Mr. Larkin has been on pretrial supervision. In that time, he has had no further law enforcement contacts. Mr. Larkin has also continued to his position at ThemTech, which he started several months before he was indicted in this case. And perhaps most significantly, Mr. Larkin has successfully addressed his marijuana use, having tested negative for all controlled substances 11 different times while on pretrial supervision. *See* PSR ¶ 62.

Mr. Larkin credits this case with helping give him the "shock" he needed to get back on a better path. PSR ¶ 21. Now that he no longer smokes daily, he feels that his mind is clearer. He's also had more time and motivation to take on more productive goals and hobbies. In his own words, he states, "I read more, I go to the gym, I go on runs and walks and bike rides, I'm more social." *Id.* Even his mother has noticed a change in Mr. Larkin over the past year, telling the Probation Office that since Mr. Larkin was charged in this

September 10, 2024
Page 5

case, she has "seen him become a better person and the young man she knew was in him" all along. PSR, ¶ 54.

## Sentencing Considerations

In many ways, Mr. Larkin's indictment, felony conviction, and year-and-a-half of pretrial supervision have gone a long way in accomplishing the goals of sentencing here. Mr. Larkin has now pleaded guilty to a felony offense. No matter the sentence the Court imposes, he will forever be marked a "felon," and he will face all of the attendant consequences of that label. Although he anticipates he will be able to keep his current employment given his strong track record there, his employment prospects in the future will undoubtedly be affected by his conviction and felony status. The lifelong "felon" label both reflects the seriousness of Mr. Larkin's offense and provides significant punishment and retribution for his actions.

Further, as a felon, Mr. Larkin will no longer be able to lawfully own or purchase guns, meaning he poses virtually no risk of committing a similar offense in the future. That prohibition accomplishes the goal of specific deterrence. The risk of recidivism is only further diminished by the fact that Mr. Larkin has already successfully addressed and overcome a factor that significantly contributed to his offense: his marijuana use.

Moreover, as someone with no prior criminal history and an exemplary record of pretrial supervision, Mr. Larkin has demonstrated that incapacitation is not necessary. He has been, and can continue to be, a positive and contributing member of his family and community.

A sentence of probation, therefore, is sufficient but not greater than necessary to accomplish the goals of sentencing here. For the above reasons, Mr. Larkin respectfully asks this Court to adopt the parties' joint recommendation and impose a sentence of probation.

Thank you for your consideration.

Sincerely,

*/s/ Dennise Moreno*
Dennise Moreno